**DIVERSACON INDUSTRIES, INC.,**
**Plaintiff–Appellant,**

v.

**NATIONAL BANK OF COMMERCE OF MISSISSIPPI, Defendant–Appellee.**

**No. 78–3420.**

United States Court of Appeals,
Fifth Circuit.

Nov. 3, 1980.

Thomas W. Prewitt, Alan W. Perry, George H. Butler, Fred Krutz, III, Jackson, Miss., for plaintiff–appellant.

Gholson, Hicks & Nichols, Hunter M. Gholson, Ralph E. Rood, Columbus, Miss. for defendant–appellee.

Before BROWN, AINSWORTH and FRANK M. JOHNSON, Jr., Circuit Judges.

JOHN R. BROWN, Circuit Judge:

A Florida corporation, Diversacon Industries, Inc., (Diversacon) commenced a diversity action in the Federal District Court for the Northern District of Mississippi, seeking to recover a construction contract debt from the surety, National Bank of Commerce of Mississippi (Bank). The District Court granted the Bank's motion for dismissal on the grounds that Diversacon had engaged in intrastate commerce without qualifying to do so as required by Mississippi law, and thus, was precluded from maintaining an action in any Mississippi State or Federal Court. We find the Court erred in its characterization of Diversacon's activities as substantially intrastate in nature. Diversacon's Mississippi activities were, in fact, in furtherance of a unitary interstate transaction—the construction of a Louisiana highway system. To affirm the District Court's finding by enforcing the Mississippi door—closing statute would impermissibly burden interstate commerce and wholly deny Diversacon a forum in which to litigate its cause. Accordingly, we reverse.

### The Corporate Components

The basic facts on appeal are uncontroverted. Diversacon, a Florida Corporation with its principal place of business in that state is one of many wholly owned subsidiaries of United States Industries, Inc. (USI), a Delaware Corporation. USI maintains an administrative office in Jackson, Mississippi at the headquarters of Con–Plex, one of its subdivisions. In 1972, USI administrative employees in Jackson traveled to Baton Rouge, Louisiana to bid on the construction of a portion of interstate highway system to be built there.[1] The bid was submitted in the name of Diversacon, listing Con–Plex's post office address and telephone in Jackson. Diversacon was awarded the contract. Subsequently, all administrative support necessary to the Louisiana construction project was handled out of the Con–Plex office in Jackson by USI personnel including the negotiation of a sub–contract with Central Builders, Inc. in Mississippi. As a part of this contract, Diversacon obtained a surety agreement with the First National Bank of Monroe County, Mississippi, Bank's predecessor, by which Bank was to reimburse it for funds

1. The project was a federal aid project designated as Federal Aid Project No. I-20-4[1] 170 (Tallulah East Section) Route I-20, Madison Parish, Louisiana.

expended on the sub–contractor's behalf.[2] When the sub–contractor defaulted and abandoned the Louisiana project in 1975, the Bank refused to honor its obligation for over $600,000 which Diversacon spent to complete the construction. Diversacon's suit and the Federal District Court's door–slamming dismissal followed.

### Is the Door Closed?

The Mississippi Federal District Court found Diversacon's activities to constitute "doing business" in that state, which required it to qualify as a foreign corporation under Mississippi law in order to have access to its courts. In reaching this conclusion, the Court considered all of the evidence before it, including pleadings, depositions and affidavits. Appropriately, therefore, we proceed to review the Court's dismissal under the "clearly erroneous" standard of F.R.Civ.P. 52(a). The door–closing statute at issue here provides:

> No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court in this state.

Miss. Code Ann. § 79–3–247 (1972).[3]

The Court rejected the application of a companion statute § 79–3–211 (1972) which exempts a foreign corporation from qualifying if they are transacting any business in interstate commerce.[4] The Court reasoned that Diversacon did not fall within the exemption because the sub–contract work around which the controversy arose, was to be performed wholly within the State of Louisiana–thus lacking an "interstate" nature.

Although we disagree with the District Court's final determination, we consider the Court's interpretation of the applicable rules to be sound. First, the Court recognized the need for a strict construction of the statute because of its penal nature. *Val–U–King Homes, Inc. v. Taylor*, 301 So.2d 857, 859 (Miss.1974); *Davis–Wood Lumber Co. v. Ladner*, 50 So.2d 615, 620–21 (Miss.1951). Then, it adopted the test set out in *Newell Contracting Co. v. State Highway Commission*, 15 So.2d 700 (Miss. 1943) for "doing business" within the meaning of the statutes as ". . . whether or not it is doing such acts as are within the function of its corporate powers, and whether the business so performed is substantial in scope." *Id.*, at 703. Because the test escapes uniform application, the Court with ample precedent made its final deter-

2. The agreement was in the form of a letter, October 18, 1972, to Diversacon from the predecessor Bank:

> RE: Project No. I 20-4(1)170
>     451 08 04
>     Madison Parish, Louisiana
> Gentlemen:
> This is to advise Central Builders, Inc. has made the necessary arrangements with First National Bank of Monroe County to reimburse Diversacon, Inc. and/or Its Assignee on a weekly basis, for any funds expending by Diversacon, Inc. and/or Its Assignee, on behalf of Central Builders, Inc., for labor on the above Captioned Project.
> All the above is with the understanding that any checks for estimates due or earned by Central Builders, Inc. will be made jointly to Central Builders, Inc. and First National Bank of Monroe County, Amory, Mississippi for the life of the project.
> It is further understood that the First National Bank of Monroe County will waive their rights to any claims they might have against Diversacon, Inc. and/or Its Assignee in connection with above.

> It is understood that this agreement refers to the above Captioned Project only and will no longer be in affect on completion and final acceptance of said project.

3. Formerly Miss. Code Ann. §§ 5309–239 (1942).

4. No foreign business corporation for profit shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the secretary of state. . . .

   Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:

   . . . . . .

   (e) Transacting any business in interstate commerce.

Miss. Code Ann. § 79–3 211 (1972).

mination upon an ad hoc basis. *S&A Realty Co. v. Hilburn,* 249 So.2d 379, 381 (Miss. 1971). *See, e.g., Republic–Transcon, Inc. v. Templeton,* 253 Miss. 132, 175 So.2d 185 (1965); *Davis–Wood Lumber Co. v. Ladner,* 50 So.2d 615 (Miss.1951); *Wiley Electric Co. v. Electric Storage Battery Co.,* 167 Miss. 842, 147 So. 773 (1933).

Both the District Court and the Bank have relied on certain facts to demonstrate Diversacon's "intrastate" status. USI administrative offices housed at the Con-Plex offices in Jackson, performed book-keeping services for Diversacon. For purposes of the Louisiana project, Diversacon used both Con–Plex's mailing address and phone number. In particular, receipts of Diversacon's payment of Central Builder's weekly payroll expenses mailed to the Bank for reimbursement carried Con–Plex's return address.[5] In, essence, the Court concluded that Diversacon's activity was geographically confined to Jackson, Mississippi.

### Finding the Key–Intrastate or Interstate?

A determination of whether or not the District Court correctly applied its door-closing statutes to the facts of this case hinges on whether Diversacon's activities were intrastate or substantially interstate. In construing the same statute now before us, the United States Supreme Court in *Allenburg Cotton Co. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), distinguished between a situation where a corporation has "localized" its business and one where a corporation enters the state "to contribute to or to conclude a unitary interstate transaction." 419 U.S. at 32–33, 95 S.Ct. at 267, 42 L.Ed.2d at 205. In *Allenburg,* the Court found that where the degree of a foreign corporation's business activity is limited to contracts, arranged through independent brokers, to purchase cotton from local farmers, and where the cotton is temporarily stored in local warehouses for classification purposes, then the foreign corporation's activities are not sufficiently intrastate to require a foreign corporation to qualify to do business.[6]

Essentially, the Court included in a federal definition of interstate commerce any activity of an intrastate nature which was an integral part of an overall interstate pattern or transaction. *See e.g., Union Brokerage v. Jensen,* 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed.2d 1227 (1944); *Ralli–Coney, Inc. v. Gates,* 528 F.2d 572 (5th Cir.1976).[7]

The Bank erroneously relies on cases which involve foreign corporations conducting thriving intrastate businesses in the forum state. *Eli Lilly & Co. v. Sav–On–Drugs,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1969) (intrastate drug sales); *Barbee v. United Dollar Stores, Inc.,* 337 So.2d 1277 (Miss.1976) (intrastate sales through local franchise dealers). The holdings of *Eli Lilly* and *Barbee,* while sound, provide little or no support for the Bank's position in view of the particular facts and circumstances underlying the present controversy.

Clearly, *Eli Lilly* is manifestly distinguishable from the present case not only in the nature and quantity of activity[8] by the

---

5. It is uncontested that the work performed at Con Plex by USI employees for Diversacon in Mississippi was within the scope of its corporate charter, that is, to keep records and generally attend to business affairs.

6. Under the more stringent view of the Mississippi Supreme Court, the characterization of the business transaction is immaterial where it can be shown that an undue burden is placed on the interstate business. *Trane Co. v. Taylor,* 295 So.2d 746 (Miss.1974).

7. Other Supreme Court cases where similar state door closing statutes were struck down involving interstate transactions include: *International Text book Co. v. Pigg,* 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678 (1909) (suit to recover purchase price on an interstate contract); *Dahnke ·Walker Milling Company v. Bondurant,* 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921) (suit to recover for the breach of an interstate contract of sale of land); *Buck Stove v. Vickers,* 226 U.S. 205, 33 S.Ct. 41, 57 L.Ed. 189 (1912) (suit to attack as fraudulent the transfer of assets of a domestic debtor).

8. Employees were ". . . engaged in work for Lilly which relates directly to the intrastate aspects of the sales of Lilly's products, . . . traveling throughout the state of New Jersey promoting the sales of Lilly's products, not to the wholesalers, Lilly's interstate customers,

foreign corporation, but also by the fact that the suit here involved a contract which was "entirely separable from any particular interstate sale." 366 U.S. at 287, 81 S.Ct. at 1320, 6 L.Ed.2d at 294. Here, the agreement upon which Diversacon is suing the Bank is clearly the single business transaction to which all of Diversacon's activities related—the construction of the Louisiana highway. Furthermore, unlike Diversacon, the foreign corporations in *Eli Lilly* and *Barbee* had established a "continuing presence" in the state for the purpose of "doing business" within the state. 366 U.S. at 284 n.1, 81 S.Ct. at 1321 n.1; 377 So.2d at 1279.[9] There is nothing in the record before this Court which suggests that Diversacon undertook any activity whatsoever in Mississippi except activities which related to the Louisiana project.

■ In determining whether Diversacon could maintain its action under § 79–3–211, the District Court failed to consider the *Allenburg* standard. We agree with the view expressed in *Cone Mills Corp. v. Hurdle*, 369 F.Supp. 426 (N.D.Miss.1974) that it would be unrealistic to conclude that the ". . . interstate commerce exception was enacted as a voluntary exercise of legislative grace." 369 F.Supp. at 432. Rather, the enactment of the exemption was obviously a recognition of a constraint imposed upon state power by the Commerce Clause.[10] "Therefore, a Mississippi Court, when determining what activities constitute interstate commerce within the contemplation of the exemption statute, would

consider itself bound by the express language of § 79–3–289 [11] of the Mississippi Code to apply the federal standard . . ." *Id.* If the District Court had applied state decisions in light of this federal standard, undoubtedly, it would have been compelled to find, as we do, that as a matter of law, Diversacon would not be barred from litigating its claim despite its failure to qualify to do business at the time of the transaction.[12]

### Unlocking the Door—A Burden on Interstate Commerce

■ Where a foreign corporation has established a continuing presence in a state for the purpose of "doing business" within that state, it is fair that it be required to comply with qualification statutes. In this case, however, where the scope of Diversacon's activities extended beyond the Mississippi border for the consummation of a definite interstate project, we hold it would be an impermissible burden on interstate commerce to give effect to denial of access through this qualification statute. As *Allenburg* stated so well ". . . Mississippi's refusal to honor and enforce contracts made for interstate or foreign commerce is repugnant to the commerce clause." 419 U.S. at 34, 95 S.Ct. at 267, 42 L.Ed.2d at 206. This Circuit has applied this constitutional principal. *Fred Hale Machinery, Inc. v. Laural Hill Lumber Co.*, 483 F.2d 58 (5th Cir.1973). There, negotiations were conducted in Louisiana and Mississippi for the

but to the physicians, hospitals and retailers who buy those products in intrastate commerce from the wholesalers. . . ." 366 U.S. at 280, 81 S.Ct. at 1319, 6 L.Ed.2d at 293.

**9.** A recent Fifth Circuit case construing Alabama's door closing statute is *SAR Mfg. v. Dumas*, 526 F.2d 1283 (5th Cir. 1976) where the Court found that (i) the foreign corporation's solicitation of businesses, (ii) maintenance of vehicles and warehouse to service the needs of the local branch corporation, and (iii) employees and the processing of some of its products, was a sufficient showing of intrastate activity to compel compliance with that state's "doing business" statutes before access to state or federal courts would be allowed.

**10.** U.S.Const. Art. I § 8 cl. 3.

**11.** The provisions of this chapter shall apply to commerce with foreign nations and among the several states only in so far as the same may be permitted under the provisions of the Constitution of the United States.
Miss. Code Ann. § 79–3 289 (1972).

**12.** Diversacon did not obtain a certificate to do business in Mississippi until 1977, so that at the time of the bid, contract, and agreement with the Bank, Diversacon was not qualified to do business within the state. Mississippi law is clear however, that subsequent qualification will not cure the penalty of the statute. 369 F.Supp. at 432; *Parker v. Lin Co.*, 197 So.2d 228, 230 (Miss.1967).

purpose of component parts manufactured in Mississippi and Georgia by a Louisiana company and to be supplied and installed in a Mississippi sawmill by the company's Louisiana employees. The Court held that these factors gave the transaction an "interstate character" and that such statutes as § 5309–239 (*See* n. 3, *supra*) cannot be enforced ". . . if their application would unreasonably burden interstate commerce by prohibiting suits growing out of transactions in interstate commerce." 483 F.2d at 60. *See, e.g., York Manufacturing Co. v. Colley,* 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963 (1918).[13]

The burden on interstate commerce is obvious in the present controversy. The Court's decision leaves Diversacon, a Florida plaintiff, without an available forum in which to litigate its claim against Bank, a Mississippi defendant, arising out of a Louisiana construction project. The National Bank Act, 12 U.S.C.A. §§ 24,[14] 94,[15] has perhaps preempted § 79–3–247 with respect to national banks.[16] *Mercantile National Bank v. Langdeau,* 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963). In construing the venue provision of the act, 12 U.S.C.A. § 94, the Court specifically held in *Citizens National Bank v. Bougas,* 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977), that despite the appearance of permissive language in the statute, ". . . national banks *may* be sued only in those state courts in the county where the banks are located . . .", the language is clear. 434 U.S. at 38, 98 S.Ct. at 90, 54 L.Ed. at 222; *See National Bank v. Associates of Obstetrics,* 425 U.S. 460, 96 S.Ct. 1632, 48 L.Ed.2d 92 (1976) (*quoting Mercantile National Bank v. Langdeau,* 371 U.S. at 561, 83 S.Ct. at 523, 9 L.Ed.2d 523 (1963)).

Because case law and the National Bank Act mandate that Bank in the instant case be sued in the county (Federal District including the county) where it is located, we hold that it would be an impermissible burden on interstate commerce to permit Mississippi courtroom doors to remain closed to Diversacon on events and contracts substantially related to interstate activities.[17]

REVERSED and REMANDED.

---

13. In *First Investment Co. v. McLeod,* 363 So.2d 774 (Ala.Civ.App.1978), the Court in construing an Alabama door closing statute, concluded that the foreign corporation there was acting primarily in interstate commerce even though it solicited sales for franchise agreements intrastate for growing and selling of Christmas trees, furnished expert help, equipment, and advise to its Alabama franchisee. These extra activities were "merely incidental" to the main undertaking—the sale and delivery of Christmas tree seedlings to Alabama from out of state.

14. **§ 24. Corporate powers of associations**
    Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power—

Fourth. To sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons.

15. **§ 94. Venue of suits**
    Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction it similar cases.

16. "National banks are federal instrumentalities and the power of Congress over them is extensive.... Unquestionably Congress had authority to prescribe the manner and circumstances under which the banks could sue or be sued in the courts ...." 371 U.S. at 558–59; 83 S.Ct. at 522, 9 L.Ed.2d at 526–27.

17. Finding that the Constitutional key fits, we decline to open the door of discussion to Bank's *Erie* claim.