**RADIO WHKW, INC., An Alabama Corporation, Plaintiff–Appellant,**

v.

**Ben YARBER, Defendant–Appellee.**

No. 87–4289.

United States Court of Appeals, Fifth Circuit.

March 11, 1988.

Rehearing Denied April 7, 1988.

Hunter M. Gholson, Gholson, Hicks & Nichols, Columbus, Miss., for plaintiff-appellant.

Wilbur O. Colom, Colom & Colom, Dennis Harmon, Donna S. Smith, Columbus, Miss., for defendant-appellee.

Before KING and DAVIS, Circuit Judges, and FELDMAN[*], District Judge.

KING, Circuit Judge:

Radio WHKW, Inc., an Alabama corporation, appeals the district court's dismissal of its breach of contract claim against Ben Yarber, a Mississippi resident, for lack of subject matter jurisdiction. The district court concluded that Radio WHKW had "localized" its business activities in Mississippi, thereby engaging in intrastate commerce—but without first qualifying to do so under Mississippi laws which govern foreign corporations transacting business in the state. Therefore, the district court held, the radio station was barred from prosecuting a lawsuit in any Mississippi state or federal court under the state's door-closing statute.

Because our review of the record and relevant case law convinces us that the business activities of the radio station demonstrated a pattern of unitary interstate transactions, and not localized intrastate

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

activity as found by the district court, we hold that the denial of access to Mississippi courts in this instance imposed an impermissible burden on interstate commerce under the commerce clause of the United States Constitution. We reverse and remand.

### I.

The facts which underlie this case are uncontested and relatively straightforward. Appellant Radio WHKW, Inc. ("Radio WHKW") is an Alabama corporation; its principal place of business also is Alabama. Appellee Ben Yarber ("Yarber") is a Mississipi resident. Radio WHKW held by assignment a "management agreement" executed by Yarber which contained a non-competition clause. Upon Yarber's resignation from his employment with Radio WHKW and his purchase of a radio station located within the primary coverage area of Radio WHKW—the territory purportedly covered by the noncompetition clause—Radio WHKW brought a diversity action against Yarber for breach of contract, seeking injunctive relief. Yarber raised various defenses, including the jurisdictional question before us.

Yarber's jurisdictional defense rests upon a Mississippi statute ("the door-closing statute") that barred any foreign corporation from maintaining a lawsuit in any Mississippi court unless the corporation obtained a certificate of authority prior to transacting business in the state.[1] Despite its substantial business activity in Mississippi, Radio WHKW did not obtain a certificate of authority to do business prior to transacting business in the state. Hence, Yarber argued, Radio WHKW did not qualify to sue in Mississippi state or federal courts because of the door-closing statute. However, Radio WHKW claimed that, under the commerce clause, it need not comply with the certification requirement because the interstate character of its business shielded it from the reach of Mississippi's door-closing statute.

Following a hearing on the issue, the district court made the following factual findings regarding the interstate character of Radio WHKW's business. Radio WHKW's principal place of business was Kennedy, Alabama—where its corporate offices and transmitter were located, and where a substantial part of production and broadcasting and all administrative, record-keeping, billing, payment and management activities occurred. However, Radio WHKW derived its income from the sale of "air time" to advertisers, many of which were Mississippi businesses. In fact, although two-thirds of the station's advertisers were from Alabama and states other than Mississippi, Mississippi advertisers accounted for more than one-half of its advertising revenues. Contracts for air time were executed by advertisers at their places of business, were reviewed and approved as to form by sales personnel, and were subject to final acceptance at the corporate offices in Kennedy, Alabama. These factual findings by the district court are uncontested on appeal.

Having concluded that Radio WHKW's business "ha[d] a definite interstate flavor" which brought its activities within the purview of the commerce clause, the district court then determined that Radio WHKW had "localized" its business activities within Mississippi—thereby exceeding the protective arm of the commerce clause and

---

1. The door-closing statute provided as follows:
   No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state. Miss. Code Ann. § 79–3–247 (1972) (repealed 1987).
   A companion statute, which set forth exceptions to the door-closing statute, exempted any foreign corporation "[t]ransacting any business in interstate commerce" from the certification requirement. Miss. Code Ann. § 79–3–211 (1972) (repealed 1987). This exemption was intended *at least* to accommodate the commerce clause's proscription of state action which would impermissibly burden interstate commerce. *Diversacon Indus., Inc. v. National Bank of Commerce,* 629 F.2d 1030, 1034 (5th Cir. 1980). However, Radio WHKW bases its appeal on the commerce clause alone, and we need not review Mississippi case law to determine whether the protection afforded a foreign corporation under the companion statute is broader than or coextensive with that afforded by the commerce clause itself.

subjecting itself to the state's door-closing statute. The district court's determination rested upon three additional factual findings: First, the court noted that Radio WHKW regularly conducted remote broadcasts of a promotional nature from Columbus, Mississippi locations. Second, Radio WHKW maintained a sales office in Columbus, Mississippi, out of which its largest sales staff operated; all daily sales meetings and most monthly meetings were conducted at that office. Third, the radio station purchased supplies and gasoline, and leased automobiles from Mississippi merchants for its personnel operating in Mississippi, and it entered into contractual arrangements with Mississippi residents such as Yarber. These factual findings by the district court also are uncontested.

Having determined from the above factors that Radio WHKW had localized its intrastate business activities, the district court ruled that the radio station could not sue in Mississippi courts because it failed to qualify under the door-closing statute. Further, although Radio WHKW did obtain a certificate of authority just prior to filing suit, the district court held that such action could not cure Radio WHKW's earlier default because the court must look to the radio station's qualification to sue at the time the cause of action arose. Since Radio WHKW had not qualified to sue at the time that Yarber initially began his competitive activities, which the district court determined was the time at which the cause of action arose, the court dismissed Radio WHKW's suit.

## II.

On appeal, Radio WHKW challenges the district court's determination that Radio WHKW had "localized" its otherwise interstate business by its activities within the state of Mississippi, and that it thereby had forfeited its constitutional immunity from the requirement that a foreign corporation transacting business in interstate commerce qualify to do business within the state.[2] Yarber responds that the district court's finding is not clearly erroneous and, therefore, must be affirmed.

■ As a preliminary matter, we reject Yarber's endorsement of the "clearly erroneous" test as the appropriate standard of review for this case. Federal Rule of Civil Procedure 52(a) prescribes the "clearly erroneous" standard for findings of fact. "Localization," however, is a legal conclusion which merely rests upon subsidiary, historical facts. The subsidiary facts relevant to a determination of "localization" are undisputed in this case; hence, we have no occasion to apply the "clearly erroneous" test. As a conclusion of law, "localization" is freely reviewable by this court. *United States v. Grayson County State Bank,* 656 F.2d 1070, 1075 (5th Cir. Unit A 1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982); *see, e.g., Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1045 (5th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987); *Horn v. C.L. Osborn Contracting Co.,* 591 F.2d 318, 320 (5th Cir.1979). Imbued with this plenary power of review, we turn our attention to the issue.

In evaluating state regulation of foreign corporations, we follow the general rule that, "where a foreign corporation has established a continuing presence in a state for the purpose of 'doing business' within that state, it is fair that [the foreign corporation] be required to comply with qualification statutes." *Diversacon Indus. v. National Bank of Commerce,* 629 F.2d 1030, 1034 (5th Cir.1980). However, the power of a state to impose qualification requirements on foreign corporations is not unfettered; the commerce clause to the United States Constitution delimits state authority to regulate the activities of foreign corporations. In *Dahnke–Walker*

---

**2.** Radio WHKW makes the additional argument that Yarber's activities constitute a continuing breach of contract, and that the radio station therefore is entitled to maintain an action in Mississippi courts for Yarber's activities subsequent to Radio WHKW's procurement of the requisite certificate of authority. We do not reach this issue since our determination that Mississippi's door-closing statute will not bar Radio WHKW's access to Mississippi courts is dispositive.

*Milling Co. v. Bondurant*, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921), the Supreme Court explained that "[a] corporation of one State may go into another ... for all the legitimate purposes of [interstate] commerce; and any statute of the latter State which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause." *Id.* at 291, 42 S.Ct. at 109. Thus, where the business of the foreign corporation is interstate in nature, a state may not burden such business with state qualification requirements unless the business of the corporation includes a distinct and separable intrastate focus, *Eli Lilly & Co. v. Sav–On–Drugs*, 366 U.S. 276, 279–83, 81 S.Ct. 1316, 1318–20, 6 L.Ed.2d 288 (1961), or the corporation has "localized" its business within the state, *Union Brokerage v. Jensen*, 322 U.S. 202, 212, 64 S.Ct. 967, 973, 88 L.Ed. 1227 (1944). Further, as we expressed in *Diversacon,* for purposes of commerce clause analysis, interstate commerce includes "any activity of an intrastate nature which [is] an integral part of an overall interstate pattern or transaction." 629 F.2d at 1033.

The crux of the issue in the instant case is whether the specific intrastate business activities upon which the district court anchored its decision reflect either a distinct and separable intrastate focus, as in *Eli Lilly*, or had become localized to such a degree that they were separable from the interstate character of the business, as in *Union Brokerage*. In deciding that Radio WHKW had localized its business activities, the court below looked to Radio WHKW's remote broadcasts from Columbus, Mississippi, to the substantial sales force which Radio WHKW maintained in Columbus, Mississippi, and to the relationships which Radio WHKW developed with Mississippi merchants and residents as a business consumer while operating its sales force in the area. We examine each of these factors under the *Eli Lilly* and the *Union Brokerage* approaches.

Remote broadcasting from the Columbus, Mississippi area entailed the transmission of live, promotional messages from the premises of advertisers in Columbus, Mississippi to the Kennedy, Alabama station—from which the messages were rebroadcast via the FCC licensed interstate transmitter to listeners in Alabama and Mississippi. Apart from a mode of delivery peculiar to radio broadcasting, we find little to distinguish the sale and delivery of radio "air time" via remote transmission from more conventional methods of interstate sale and delivery. The transaction is the same: Radio WHKW is selling air time across state boundaries to secure the revenues on which it operates.

This case does not present a two-tiered transaction, as occurred in *Eli Lilly*, where the foreign drug manufacturing company not only sold its merchandise interstate to wholesalers, but also participated directly in intrastate sales transactions between wholesalers and retailers. 366 U.S. at 280, 81 S.Ct. at 1319. To the contrary, we can identify only a single commercial transaction relating to the remote broadcasts—and that is the sale of air time to an advertiser.

Neither does *Union Brokerage* persuade us that Radio WHKW's remote broadcasting is a "localized" activity. We have serious doubts whether *Union Brokerage* is relevant at all in the context of the facts before us. The brokerage services which were at the foundation of that case affected interstate commerce only tangentially. First, customs brokers facilitated compliance with federal customs requirements at ports of entry to the United States and so were necessary to commerce, but had no connection with the underlying business transactions which constituted the commerce itself. Second, the customhouse brokerage services in *Union Brokerage* were offered, performed and completed entirely within each of two separate states at two separate ports of entry.[3] However, unlike

---

3. Additionally, the brokerage firm's failure to comply with Minnesota's Foreign Corporation Act in *Union Brokerage* was particularly egregious. Ninety percent of Union Brokerage's business had been diverted to a Minnesota port of entry because the Canadian Pacific Railway had re-routed shipments from the brokerage firm's original port of entry in North Dakota. Of course, we recognize that the *Union Brokerage* Court relied upon the self-contained or sev-

the brokerage services in *Union Brokerage*, the remote radio transmissions here directly involved a delivery of services across state lines. Further, these services were essential to and inseparable from the underlying interstate sales transactions themselves. We note that the *Union Brokerage* Court specifically disclaimed any intent to reach "a foreign corporation merely coming into [the state] to contribute to or conclude a unitary interstate transaction." 322 U.S. at 211, 64 S.Ct. at 973. Later, in *Allenburg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), the Supreme Court reiterated that *Union Brokerage* does not control cases in which "a foreign corporation enters the State to contribute to or conclude a unitary interstate transaction." *Id.* at 33–34, 95 S.Ct. at 267 (citing *Union Brokerage* ). Hence, we question *Union Brokerage* 's applicability to the facts before us.

The Supreme Court's decision in *Allenburg Cotton* also militates against a finding of "localization." The sale of cotton in *Allenburg Cotton* involved temporary intrastate storage and classification of the cotton prior to shipping with the result that Allenburg maintained a "perpetual" inventory in its Mississippi warehouse because of the sheer volume of its interstate sales transactions. However, this "perpetual" temporary inventory did not destroy the corporation's exemption from qualification because the Court viewed the intrastate storage, sorting and classification "as a prerequisite to its shipment in interstate commerce." 419 U.S. at 33, 95 S.Ct. at 267. Similarly, the sale of air time in the instant case required the temporary services of a remote transmitter and support personnel to convey each advertiser's desired message from Columbus, Mississippi to the radio tower in Kennedy, Alabama. Both cases reveal a pattern of unitary interstate transactions. The intrastate activity—remote broadcasting—is inseparable from the interstate transaction and does not constitute localization.

Finally, when construing the door-closing statute in another case, *Fred Hale Machinery, Inc. v. Laurel Hill Lumber Co.*, 483 F.2d 58, 60 (5th Cir.1973), this court recognized that services integral to an interstate sale do not constitute intrastate activity for which a foreign corporation must forfeit the protection of the commerce clause. The interstate transaction in *Fred Hale* was the manufacture and sale of sawmill components by a Georgia company to a Mississippi sawmill. Although Fred Hale employees did not assist in transporting the components to the sawmill, they assembled and supervised installation of the system at the sawmill following their transport. Despite this substantial local activity within Mississippi, we recognized the unitary nature of the real transaction—an interstate sale of machinery. Later, in *Diversacon*, we held that although sub-contract work on an interstate highway was to be performed wholly within the state of Louisiana, the single business transaction to which all of Diversacon's activities related clearly was the construction of the interstate highway. 629 F.2d at 1032, 1034.

We conclude that neither *Eli Lilly* nor *Union Brokerage* support a finding of "localization" as to Radio WHKW's remote broadcasting from Columbus, Mississippi localities. Further, both *Allenburg Cotton* and our analysis in *Fred Hale* and *Diversacon* compel a determination that such broadcasting is inseparable from the underlying interstate sale of air time. Hence, by contributing to a unitary interstate transaction, Radio WHKW's remote broadcasting activities fall within the governance—and hence the protections—of the commerce clause.

■ We reach a similar conclusion regarding the remaining "localization" factors relied upon by the district court. Although Radio WHKW maintained a substantial sales force in Columbus, Mississippi, that factor alone is insufficient to establish either localization or a distinct and separable business activity within the state.

erable nature of the brokerage firm's business activities within Minnesota, rather than the rela-

tive volume of its business, in deciding the case.

The constitutional right to transact business in interstate commerce without obstruction from state regulation includes the right to search out those business opportunities. *Eli Lilly*, 276 U.S. at 279, 81 S.Ct. at 1318–19 (citing *Robbins v. Shelby County Taxing Dist.*, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694 (1887)). A foreign corporation should be free to maintain a sales operation promoting interstate sales within a state without fear that its rights will not be enforceable in the state. We note that the test in *Eli Lilly* was not the thirty-eight salespersons that the company employed within the state. Rather, the role of those employees in soliciting and participating in distinctly intrastate sales—sales between merchants and retailers—controlled the outcome. *Allenburg Cotton*, 419 U.S. at 32, 95 S.Ct. at 267 (explaining *Eli Lilly*).

Likewise, Radio WHKW's contractual relations with Mississippi merchants and citizens as a business consumer did not support the decision below. The record clearly indicates that all of Radio WHKW's contacts with Mississippi businesses and citizens related to its sales operation. It would be incongruous to permit local sales personnel to search out interstate business opportunities, yet deny access to goods and services necessary to perform that function. *Cf., e.g., Diversacon*, 629 F.2d at 1032, 1034 (local sub-contracting of interstate highway project). To require that participants in interstate commerce refrain from purchasing supplies or services within a state or suffer the loss of their commerce clause protections itself imposes an impermissible burden on interstate commerce. A foreign corporation must enjoy the same access to the domestically-provided goods and services required to complete its interstate business as is enjoyed by domestic corporations. *Id.*

Finally, we find *Union Brokerage* no more persuasive or relevant regarding sales personnel who are engaged in promoting a unitary interstate transaction than we found it in the context of remote transmissions which effectuate a unitary interstate transaction. As the *Allenburg* Court explained, *Union Brokerage* does not apply to an activity which is an integral part of an overall interstate pattern or transaction. 419 U.S. at 33–34, 95 S.Ct. at 267; *see also Diversacon*, 629 F.2d at 1033.

### III.

Because Radio WHKW's business activities within the state of Mississippi demonstrated a pattern of unitary interstate transactions rather than a localized or separable intrastate focus, the denial of access to Mississippi courts in this instance imposed an impermissible burden on interstate commerce. We REVERSE and REMAND.