This appeal presents the question whether a corporation not qualified to do business in Alabama can sue and recover damages for the alleged breach of a contract to move and set up an oil drilling rig.
The appeal is from a final judgment in favor of the plaintiff entered upon a jury verdict in a breach of contract and fraud action. The lawsuit arose out of the transport and assembly of two oil rigs and the alleged nonpayment of charges for that service.
The plaintiff, G.B. "Boots" Smith Corporation (hereinafter referred to as "Smith") is a Delaware Corporation with its principal place of business in Mississippi. It is engaged in the business of disassembling oil drilling rigs, transporting them to a new location, and re-erecting them.
The defendant, Sanwa Business Credit Corporation (hereinafter referred to as "Sanwa"), is a Delaware Corporation with its principal place of business in Illinois. Sanwa is a finance company dealing primarily with lease transactions.
The two oil rigs, identified as rigs No. 5 and No. 10, were transported by Smith from Escambia County, Alabama, to Bibb County, Alabama, and from Cass County, Texas, to Escambia County, Alabama, respectively. Smith was not qualified to do business in Alabama at the time it transported and erected the two rigs. Sanwa, the owner of rig No. 10 and the lessor of rig No. 5, was qualified to do business in Alabama.
Smith's attempt to recover the amount allegedly owed it for services rendered in connection with moving the rigs proved to be futile.
Smith filed suit against Sanwa and other parties, who were later dismissed, claiming damages on theories of breach of an implied contract; quasi-contract; breach of an *Page 1337 
express contract; and fraud. As to rig No. 5, which was moved within Alabama, the trial court granted Sanwa's motion for summary judgment on the first three counts (implied contract, quasi-contract, and express contract) and later denied its motion for directed verdict on the fraud count.
The case went to the jury on all four counts regarding rig No. 10 and on the fraud count regarding rig No. 5. The jury found in favor of Smith on the first three counts[1] (as to rig No. 10) and in favor of Sanwa on the two fraud counts (as to both rigs No. 5 and No. 10). The trial court entered judgment against Sanwa in the amount of $155,656.33, based on the verdict. Sanwa's motion for judgment notwithstanding the verdict, or, in the alternative, for new trial was denied. Sanwa then appealed. Smith originally cross-appealed the summary judgment on counts one, two, and three as to rig No. 5. That cross-appeal was later voluntarily dismissed, however.
For the reasons that follow, we reverse.
Although numerous issues are raised, the main issue concerns the right of a foreign corporation to sue in an Alabama court upon a cause of action based on contract when the foreign corporation had not qualified to do business in Alabama at the time the contract was made.
Sanwa contends that Smith, by electing not to qualify to do business in Alabama, was doing business contrary to the provisions of Ala. Const., Art. XII, § 232, and that Smith's contract was subject to the provisions of § 10-2A-247(a), Code 1975. Those pertinent provisions are as follows:
 "No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. . . ."
Ala. Const., Art. XII, § 232.
 "All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity. . . ."
§ 10-2A-247(a), Code 1975.
It has long been recognized that this statute is also applicable to contracts executed in other states that are to be performed in Alabama. Citizens' Nat. Bank v. Busheit,14 Ala. App. 511, 71 So. 82 (1916). See also, C. Fleming, Defenseof a Contract Action Based on the Failure of the PlaintiffForeign Corporation to Have Qualified to do Business inAlabama, 38 Ala. Law. 223 (1977).
Article XII, § 232, was amended on April 1, 1988, by Amendment No. 473; however, that portion quoted above remains intact.
In order for the preclusion language of Art. XII, § 232, of the Alabama Constitution and § 10-2A-247(a), Code 1975, to be set into motion, the business of the non-qualified corporation's activities must be "intrastate in nature."Johnson v. MPL Leasing Corp., 441 So.2d 904, 905 (Ala. 1983); see also Article I, § 8, cl. 3, United States Constitution.
It is axiomatic that
 "a transaction involving no more than a sale, transportation and delivery of out-of-state goods by a nonresident to a local party on orders taken in Alabama would be an act of interstate commerce to which the laws of this state are not and could not be applicable."
Loudonville Milling Co. v. Davis, 251 Ala. 459, 462,37 So.2d 659, 661 (1948).
Here, however, we have a contract involving transportation, assembly, and erection of an oil drilling rig. The issue to be resolved, therefore, is whether the transport *Page 1338 
and erection of rig No. 10 was intrastate in character.
Smith concedes that the moving of rig No. 5 from Escambia County, Alabama, to Bibb County, Alabama, was an intrastate activity. It argues, however, that the transport of rig No. 10 from Texas to Alabama was interstate commerce and therefore not subject to Alabama's qualification statute.
Smith cites several cases in support of its contention that the transport and erection of rig No. 10 were sufficiently interstate in nature that it did not have to qualify to do business in Alabama.
Smith cites Dahnke-Walker Milling Co. v. Bondurant,257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921), and Allenberg CottonCo. v. Pittman, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195
(1974). Both of those cases concern the purchase of commodities in one state and the subsequent shipment of those commodities to another state. In each case, the respective state supreme court refused to allow a non-qualified foreign corporation to enforce a contractual obligation in its state's courts, on the grounds that the transaction was intrastate in nature. The United States Supreme Court reversed, however, holding that the movement of the commodities across state lines placed them within the scope of interstate commerce.
Smith argues that the cases of In re Delta Molded Products,Inc., 416 F. Supp. 938 (N.D.Ala. 1976), aff'd, 571 F.2d 957
(5th Cir. 1978), and Wallace Construction Co. v. IndustrialBoiler Co., 470 So.2d 1151 (Ala. 1985) are factually similar to the present case. In Delta Molded Products, the district court, applying Alabama law, held that a non-qualified foreign corporation that had sold complex machinery used in the plastics industry and had shipped it to Alabama, and that had also furnished experts to assemble the machinery, was entitled to enforce the contract despite its failure to qualify in Alabama. The court, emphasizing the intricate nature of themachinery, stated:
 "The machines were manufactured by IMPCO in New Hampshire and were sold and shipped to DELTA in Alabama. Taken alone, this is admitted by all parties to be pure interstate commerce.
 "As a necessary adjunct to the basic contract, IMPCO furnished experts to come into Alabama and assemble the machines, put them in operation, train DELTA employees in the operation thereof, perform warranty maintenance and repairs as well as ordinary maintenance and repairs. These activities are totally essential to the basic contract but are only incidental thereto and do not constitute intrastate commerce. It must be remembered that the machines involved here are highly sophisticated complex machines designed and intended to be used for a specific purpose and that only specially trained highly qualified experts were capable of working on them. The record discloses that there were no persons to be found in Alabama with the required expertise to perform this work. The agreement by IMPCO to perform this assembly, startup, maintenance and repair work was totally essential to the accomplishment of the interstate transaction (the sale and purchase of the machines) agreed to by IMPCO and DELTA; and without such an agreement, DELTA could not within reason have purchased the machines. With no other source of obtaining such essential services, no sale would have been made by IMPCO. Therefore, it is the opinion of this court that the performing of these services does not constitute intrastate commerce, but is merely incidental to the basic interstate transactions, although essential thereto."
416 F. Supp. at 943. (Emphasis supplied.)
In Wallace Construction Co., the plaintiff, a foreign corporation, contracted with the defendant to manufacture and install a complex wood fuel boiler system. The boiler was manufactured by plaintiff in Georgia and was shipped to the Alabama job site in 300 to 400 separate parts, and was there assembled and installed by plaintiff. The assembly and installation of the boiler took 300 days. The Court held that the installation and assembly of the boiler *Page 1339 
by the plaintiff's employees "did not constitute intrastate business, but [was] necessary and incidental to the interstate sale of the boiler itself." 470 So.2d at 1155. Accentuating the highly technical nature of the boiler system, the Court further held that
 "the contract was for the manufacture and sale of a complex piece of machinery, and the agreement to install it was not only a valuable trade inducement but a reasonable and appropriate incident of the sale itself."
470 So.2d at 1156.
Finally, Smith cites Fred Hale Machinery, Inc. v. Laurel HillLumber Co., 483 F.2d 58 (5th Cir. 1973). Fred Hale Machinery, a case involving Mississippi's qualification statute, is succinctly summarized in Radio WHKW, Inc. v. Yarber,838 F.2d 1439, 1444 (5th Cir. 1988), as follows:
 "The interstate transaction in Fred Hale was the manufacture and sale of sawmill components by a Georgia company to a Mississippi sawmill. Although Fred Hale employees did not assist in transporting the components to the sawmill, they assembled and supervised installation of the system at the sawmill following their transport. Despite this substantial local activity within Mississippi, we recognized the unitary nature of the real transaction — an interstate sale of machinery."
The cases mentioned above, along with numerous cases cited in Smith's brief, involve services incidental to an interstatesale and, thus, fall within the ambit of the interstate commerce clause. The cases echo the sentiments expressed inGibbons v. Ogden, 22 U.S. (9 Wheaton) 1, 6 L.Ed. 23 (1824), wherein the Supreme Court denied the state's ability to regulate or burden the flow of interstate commerce. The states are, however, permitted to regulate intrastate activities.
 "[W]here a foreign corporation has established a continuing presence in a state for the purpose of 'doing business' within that state, it is fair that [the foreign corporation] be required to comply with qualification statutes."
Diversacon Industries. v. National Bank of Commerce ofMississippi, 629 F.2d 1030, 1034 (5th Cir. 1980).
 "The traditional theoretical basis for permitting states to regulate the commercial affairs of foreign corporations carrying on business within their borders is derived from decisions of the Supreme Court holding that, as the corporation has legal existence only in the state of its creation and is not a citizen within the meaning of the privileges and immunities clause, a state may exclude entirely foreign corporations from engaging in local business. If, through comity, a state chooses to admit a foreign corporation, it may do so on whatever conditions it deems appropriate."
Sanctions for Failure to Comply with Corporate QualificationStatutes: An Evaluation, 63 Colum. L.Rev. 117, 118, 119 (1963).
The cases on which Smith relies, while sound, are distinguishable from the case at bar.
The case of Computaflor Co. v. N.L. Blaum Construction Co.,289 Ala. 65, 265 So.2d 850 (1972), from which we quote extensively, provides precedent for the instant case. InComputaflor, this Court held as follows:
 "The courts generally hold that interstate commerce is distinguishable from building and construction work. '* * * [A] foreign corporation doing construction work within a state is held to be doing business in that state and is not exempted from local regulation by the fact that it brings materials or laborers into the state.' 15 Am.Jur.2d, Commerce, § 29.
"The decisions of this court echo such rule.
 " 'It is evident that, had the transaction in question involved no more than the sale and delivery of the machinery by the plaintiff to the defendant in Alabama, it would have been an act of interstate commerce, to which the laws of Alabama are not and could not be applicable. But the contract was not for the sale of machinery. *Page 1340 
It was an entire contract for transporting and assembling (that is, building into a structure) certain materials on the defendant's premises. This included, as set forth in the complaint, and replication[,] both labor and materials; and the fruition of the contract was not the delivery of an article of commerce to the defendant, but the erection of an improvement on its premises for a gross consideration. Beard's Case, 71 Ala. 60.
 " 'In doing this there can be no doubt but that the plaintiff was doing business in Alabama, became subject to its laws with respect thereto, and was not within the protection of the principles that render interstate commerce immune against local regulation. Certainly labor is not an article of commerce, nor is the agreement to supply it, nor the execution of the agreement, an act of commerce.' American Amusement Co. v. East Lake Chutes Co., 174 Ala. 526, 56 So. 961 [(1911)].
 "In a like vein, the holding of this court in George M. Muller Manufacturing Company v. First National Bank of Dothan, 176 Ala. 229, 57 So. 762, was as follows:
 " 'The contract shows more than an ordinary sale, and in its entirety covers the furnishing of material and the erection of same in a specified manner, as well as many other acts, such as the construction of brick wall, wainscoting, tinting, and the doing of divers things, in addition to supplying the material, and therefore includes the doing of business in this state as previously defined by this court.'
 "In Gray-Knox Marble Co. v. Times Building Co., et al., 225 Ala. 554, 144 So. 29, [(1932)] the marble company subcontracted with the defendant to furnish and set marble floors and wall wainscoting, but could not recover under the contract because it had never qualified to do business in Alabama.
 "One of our latest cases in point is Calvert Iron Works, Inc. v. Algernon Blair, Inc., 284 Ala. 655, 227 So.2d 424 [(1969)], where a non-qualified foreign corporation subcontracted to and did furnish and erect certain steel in connection with additions to and alterations to Denny Stadium. It was there held that [it] could not recover from the general contractor because of [the qualification provisions of Alabama law].
 "Had the contract required the appellant only to furnish flooring materials, such clearly would have been interstate commerce and enforceable. However, the appellant not only furnished materials, but also labor in applying the mastic and felt, in laying the flooring, in sanding the floors, in sealing the floors, and in applying a hard varnish finish. Under the above authorities, the appellant clearly violated § 232 of the Constitution and the above-cited Code provisions and is prohibited from recovering herein. While the rule may appear to be harsh, it is a part of this state's Constitution and statutes and cannot be ignored or eliminated by judicial decision."
289 Ala. at 68-69, 265 So.2d at 852-53 [emphasis supplied].
The case of Sanjay, Inc. v. Duncan Construction Co.,445 So.2d 876 (Ala. 1983), is somewhat similar to this case. In Sanjay, a nonqualified foreign corporation contracted to furnish certain work, labor, and prefabricated materials in and about the construction of a motel in Sheffield, Alabama. A dispute arose over an alleged nonpayment of $270,000 for the construction work performed. Sanjay ultimately filed suit to recover the unpaid balance. In response, the defendants raised the qualification statute as a defense. The trial court granted the defendants' motion for summary judgment because of Sanjay's failure to qualify. On appeal, Sanjay pointed out that it had made a belated attempt to qualify during performance of the contract. This court refused to accept Sanjay's argument that it was categorically engaged in interstate commerce, stating:
 "There is a difference between 'contracts requiring only the furnishing of materials, and contracts requiring the seller to *Page 1341 perform construction activities.' [Citation omitted; emphasis added in Sanjay.] From the contract signed by the parties, along with the affidavits, it is obvious that more was involved in this contract than the mere 'sale and delivery of materials' into Alabama."
445 So.2d at 881.
The question of whether a foreign corporation is engaging in an intrastate activity, so as to require qualification with the secretary of state, is to be determined on a case by case basis. Greentree Acceptance, Inc. v. Blalock, 525 So.2d 1366
(Ala. 1988).
In the present case, Smith hauled pieces of rig No. 10 into Alabama and assembled them, so that the rig could be used to drill a well.
Smith equates its activities associated with rig No. 10 within Alabama to "building a bridge." Hence, more was involved than just hauling a rig into Alabama. The assembly of the rig was not an adjunct to the transportation; the transportation was an adjunct to the erection.
We think clearly that the combination of labor and construction in a service contract, involving a nonqualified foreign corporation, unequivocally places that contract within the purview of § 10-2A-247(a), supra, requiring qualification.
We are therefore, compelled to hold that Smith, as a nonqualified foreign corporation, should not be allowed to proceed in the Alabama court system to recover under any theory sounding in contract.
The judgment appealed from is reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] Due to our disposition of this appeal, it is not necessary to address the inconsistency of the jury's verdict.