82 So.2d 200

**Shirley SMITH**

v.

**CHICKAMAUGA CEDAR COMPANY, Inc.**

**6 Div. 894.**

Supreme Court of Alabama.

Aug. 18, 1955.

St. John & St. John, Cullman, and Scott, Dawson & Scott, Fort Payne, for appellee.

Russell W. Lynne, Decatur, for appellant.

GOODWYN, Justice.

The appellant brought suit against appellee for breach of a written contract entered into on December 11, 1953, for cutting logs into lumber. The complaint, as last amended, consisted of three counts. The contract, which is made a part of each of the counts, provides, in material respects, as follows:

"1. Lumberman [appellee] agrees to furnish a location for the purpose of operating Contractor's [appellant's] mill, to Contractor, at or near Lumberman's assembly yard at Cullman, Alabama.

"2. Contractor agrees to move his said mill upon the location, as stated, within fifteen (15) days from the execution of this agreement, and operate the same in sawing into lumber, all logs furnished Contractor at such location as the same are delivered.

"3. Contractor agrees to saw said logs for grade, or in such manner as to obtain the best grade of lumber possible from the log.

"4. Contractor agrees to flat pile said lumber at the end of the mill in such location as same may be received directly into or onto trucks of lumberman.

"5. Contractor agrees to saw said logs in such quantities as · they are received in a continuous operation, having due regard for breakdowns and causes beyond his control, but maintaining as near as possible the full capacity of his mill.

"6. Contractor agrees to abide by and meet all requirements of all State and Federal Laws, relating to wages and hours, labor laws, workmen's compensation and all other such requirements, and to obtain coverage for workmen's compensation with a company qualified to do business in Alabama.

"7. Contractor agrees to hold Lumberman free and harmless from any and all liability incidental to the operations of contractor's mill on the premises of Lumberman.

"8. Contractor agrees to furnish all labor and equipment necessary for the operation contemplated herein at his own expense and it is understood and agreed that Lumberman retains no right of supervision or control of any kind or description whatsoever over said operation, equipment, or labor so furnished by Contractor hereunder.

"9. Lumberman agrees to furnish logs at such location for cutting by Contractor in such quantities as Lumberman deems feasible and economical, having regard for market conditions and availability of such logs in such vicinity.

"10. Lumberman agrees to pay contractor for cutting such logs the sum of Fifteen ($15.00) Dollars, per M. ft.· payable weekly and according to the scale furnished by lumberman.

"It is agreed that this agreement shall continue for a period of one year from the date hereof, except that if either party shall fail to perform each and every agreement, condition, or covenant hereof, the other party shall have the option of terminating the contract."

The breach of the contract is said ·to consist of failure and refusal on the part of appellee to place logs at the· location furnished by appellee for cutting of .the ·logs by appellant. There is no claim that appellee has failed to pay appellant for the cutting of logs actually furnished. The position taken by appellant, and as alleged in the complaint, is that logs, although obtainable by appellee in Cullman County and adjoining counties, were not furnished after March 18, 1954; that "it was feasible and economical to have such logs manufactured into lumber having due regard for market conditions and the availability of such logs in such vicinity"; that he has at all times been "ready, willing and

able to manufacture said logs into lumber as stipulated in said contract"; that he "was put to much expense in the purchase and installation of proper mills, saws, machinery and equipment and mill supplies and paraphernalia to carry on said enterprise"; and that by reason of "the defendant's breach of the said contract the plaintiff lost the fruits and profits of carrying on said enterprise and his said machinery and equipment were thereby proximately caused to deteriorate in value and damaged by the nonuse thereof." It is further alleged that appellee stopped the placing of logs "through pretense or subterfuge and not in good faith but through mere pretext."

Appellee demurred to the complaint. The principal ground is that, under the provisions of Section 9 of the contract, the furnishing of logs for cutting is left to the sole discretion of appellee, thereby rendering the contract so indefinite and uncertain as to be unenforceable. The demurrer was sustained. Because of this adverse ruling, plaintiff suffered a nonsuit to be taken and prosecutes this appeal from the judgment of nonsuit.

It is an approved principle that "the law does not favor, but leans against the destruction of contracts because of uncertainty; it will, if feasible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained." Hamilton v. Stone, 202 Ala. 468, 469, 80 So. 852; McIntyre Lumber & Export Co. v. Jackson Lumber Co., 165 Ala. 268, 274, 51 So. 767, 770. But, as stated in Jones v. Lanier, 198 Ala. 363, 366, 73 So. 535, 536, the court "cannot set up a contract for the parties". See, also, Pizitz-Smolian Co-op. Stores v. Meeks, 224 Ala. 330, 331, 140 So. 442.

It seems to us that Section 9 of the contract clearly leaves to appellee the right, at its own option and discretion, to determine what quantity of logs, if any, should be furnished for cutting into lumber by appellant. There is no provision in the contract obligating appellee to furnish any specified number of logs, nor is there any criterion furnished by the contract for ascertaining the number of logs to be furnished by appellee. The provision is that logs will be furnished "in such quantities as Lumberman (appellee) *deems* feasible and economical". That means, as we interpret it, such logs as appellee should determine, in its sole discretion, to be feasible and economical. Webster's New International Dictionary, 2d Ed., p. 685, defines the word "deem" as follows:

"To have an opinion; to judge; believe; suppose; as, to deem well of a thing; * · * *.

"To conclude or believe on consideration; to form a judgment upon; to hold in opinion; to regard; esteem; think."

"To sit in judgment over or upon; to judge; also, to pronounce judgment upon; to decide; * * *."

The same authority, pp. 926, 814, defines, "feasible" and "economical" as follows:

*"Feasible"*—"1. Capable of being done, executed, or effected; possible of realization; as, your plan seems feasible; hence, successful in operation.

"2. Capable of being managed, utilized, or dealt with successfully; suitable; * * *.

"3. Likely; probable; reasonable."

*"Economical"*—"Managing, or managed, with frugality; avoiding waste; frugal; thrifty; saving; as economical use of money or time."

It seems to us in applying these definitions to the obligation assumed by appellee under the contract, that appellee is given "an unlimited right to determine" the extent of its performance with respect to the furnishing of logs, thereby rendering its obligation too indefinite for legal enforcement. As stated in 12 Am.Jur., Contracts, § 66, p. 568:

"A reservation to either party to a contract of an unlimited right to determine the nature and extent of

his performance, renders his obligation too indefinite for legal enforcement."

From Sloss-Sheffield Steel & Iron Co. **v.** Payne, 186 Ala. 341, 346, 64 So. 617, 618, is the following:

"The obligations assumed by parties attempting to contract depends upon the duty each undertakes with reference to the subject-matter thereof; and, if, in undertaking to engage, the matter with reference to which the duty is to be performed is left uncertain, indefinite, there is the absence of an indispensable element to effectually bind the parties."

As stated in Restatement of the Law of Contracts, Vol. I, § 32, pp. 40–41:

"An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.

"*Comment:*

"a. Inasmuch as the law of contracts deals only with duties defined by the expressions of the parties, the rule stated in the Section is one of necessity as well as of law. The law cannot subject a person to a contractual duty or give another a contractual right unless the character thereof is fixed by the agreement of the parties. A statement by A that he will pay B what A chooses is no promise. A promise by A to give B employment is not wholly illusory, but if neither the character of the employment nor the compensation therefor is stated, the promise is so indefinite that the law cannot enforce it, even if consideration is given for it.

"b. Promises may be indefinite in time or in place, or in the work or things to be given in exchange for the promise. In dealing with such cases the law endeavors to give a sufficiently clear meaning to offers and promises where the parties intended to enter into a bargain, but in some cases this is impossible.

"c. Offers which are originally too indefinite may later acquire precision and become valid offers, by the subsequent words or acts of the offeror or his assent to words or acts of the offeree."

The applicable principle is thus stated in 17 C.J.S., Contracts, § 36c(1), pp. 364–365:

"It is essential to a contract that the nature and the extent of its obligations be certain. If an agreement is uncertain it is because the offer was uncertain or ambiguous to begin with, for the acceptance is always required to be identical with the offer, or there is no meeting of minds and no agreement. * * * Therefore, if the offer is in any case so indefinite as to make it impossible for a court to decide just what it means, and to fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement. * * *"

From 1 Williston on Contracts, Rev.Ed., §§ 37, 43, pp. 98–99, 126, is the following:

"It is a necessary requirement in the nature of things that an agreement in order to be binding must be sufficiently definite to enable a court to give it an exact meaning. * * *. A lack of definiteness in an agreement may concern the time of performance, the price to be paid, work to be done, property to be transferred, or miscellaneous stipulations in the agreement. Especially a reservation to either party of a future untrammelled right to determine the nature of the performance, * * * has often caused a promise to be too indefinite for enforcement." (§ 37).

" * * * [A] promise to give anything whatever which the promisor may choose, or to do or give something whatever the promisor pleases, is illusory, for such promises would be satisfied by giving something so in-

finitely near nothing or by performance so infinitely postponed as to have no calculable value." (§ 43).

It follows, from what we have said, that the judgment appealed from is due to be affirmed. It is so ordered.

Affirmed.

LAWSON, STAKELY, MERRILL and MAYFIELD, JJ., concur.