**SHOOK & FLETCHER INSULATION CO., Plaintiff-Appellant,**

v.

**PANEL SYSTEMS, INC., Defendant-Appellee.**

No. 85–7230.

United States Court of Appeals, Eleventh Circuit.

March 26, 1986.

Michael L. Chambers, Birmingham, Ala., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge.

In this diversity action, we are asked to decide whether a contract between appellant, an Alabama based corporation, and appellee, a Tennessee corporation, is enforceable under Alabama statutes prohibiting unregistered foreign corporations from "doing business" in Alabama. We agree with the district court that the contract was not void and affirm the court's order entering judgment on the jury verdicts for appellee.

## FACTS

During the fall of 1982, Shook and Fletcher Insulation Company, Inc. (Shook and Fletcher), a corporation incorporated under the laws of Delaware, but with its principal place of business in Alabama, entered into negotiations with Alabama Power Company (APCO) to install insulation panels at the APCO Miller Steam Plant Unit 2 located in West Jefferson, Alabama. Panel Systems, Inc. (PSI), a corporation incorporated under the laws of Tennessee, with its principal place of business in Hurricane Mills, Tennessee, is engaged in the design and manufacture of pre-insulated panels. It sought to obtain the subcontract for the APCO Miller project. PSI traveled to Shook and Fletcher offices in Birmingham, Alabama, to discuss the subcontract, and Shook and Fletcher traveled to Hurricane Mills, Tennessee, to inspect PSI's production facilities.

On November 18, 1982, PSI's employees traveled to Birmingham to meet with repre-

James W. Gewin, Bradley, Arant, Rose & White, and Joseph S. Bird, III, Birmingham, Ala., for plaintiff-appellant.

sentatives from APCO and Shook and Fletcher. The meeting, which lasted approximately two hours, was called so that PSI could explain its design for insulation panels. Subsequently, PSI compiled a written bid for the "Miller Project" and sent it to Shook and Fletcher's offices in Birmingham.

Another meeting between PSI and Shook and Fletcher occurred on February 14, 1983, at the APCO Miller job site. PSI demonstrated the sufficiency of the proposed roof system on the Miller job and went over roof support calculations with APCO engineers. The parties also discussed the prospect of PSI locating a fabrication facility in Graysville, Alabama. The meeting ended with APCO verbally awarding the general insulation contract to Shook and Fletcher. Shook and Fletcher then verbally awarded the subcontract to PSI.

Shook and Fletcher sent PSI three written purchase orders for panels which, it claims, confirmed a contract between the parties. On or about May 13, 1983, Shook and Fletcher sent PSI the final purchase order. PSI claims that the final purchase order did not reflect the entire bid proposal that PSI submitted in 1982; it deleted work and materials on hoppers and air preheaters which, in turn, resulted in a decrease in the contract's value. Nevertheless, PSI began to ship materials to the job site approximately one week after receiving the final purchase order.

Throughout the latter part of the summer and fall of 1983, Shook and Fletcher expressed dissatisfaction with PSI's performance on the Miller job. Shook and Fletcher claimed that PSI's panels were defective due to improper pin spacing, bowing, improper nesting, and the presence of burrs and other items. PSI representatives made numerous trips to Alabama to inspect and investigate complaints about the panels and to instruct Shook and Fletcher employees in installation procedures. As a result of the problems on the

Miller project, the relationship between APCO and Shook and Fletcher began to deteriorate. Shook and Fletcher alleges that it fell behind schedule because it had to spend a substantial amount of time correcting problems caused by PSI's defective panels.

On January 17, 1984, Shook and Fletcher sought a declaratory judgment that PSI had breached its agreement to supply insulation panels for the Miller job. Shook and Fletcher also requested that the court determine that the agreement between Shook and Fletcher and PSI was null and void and that Shook and Fletcher had no further obligation to PSI. On February 6, 1984, PSI filed a counterclaim against Shook and Fletcher seeking damages for breach of contract, sums due for goods sold and delivered, and for recovery of trailers left on the Miller project job site. Shook and Fletcher responded to PSI's claims by asserting, among other things, the invalidity of the contract based upon PSI's failure to qualify to do business in the state of Alabama.

The jury returned a special verdict finding: (1) that Shook and Fletcher owed PSI $122,252 plus interest for PSI's work on the Miller Steam Plant Unit 2 contract; (2) that the contract between Shook and Fletcher and PSI for the Miller Steam Plant Unit 2 was not made in Alabama; and (3) that PSI did not perform a substantial portion of the work for the Miller contract in Alabama.

The district court entered judgment in accordance with the jury's verdict. Shook and Fletcher filed a motion for judgment notwithstanding the verdict or for new trial alleging that the contract was void and unenforceable due to PSI's failure to register to do business in Alabama. The district court denied Shook and Fletcher's motions and found, as a non-jury issue, that the contract at issue was not void under Alabama law. Shook and Fletcher appeal from the district court's order entering judgment in PSI's favor.

## DISCUSSION

On appeal, Shook and Fletcher contend: (1) that the contract between PSI and Shook and Fletcher was void under Alabama law because the contract was made in Alabama and PSI had failed to qualify to do business in Alabama; (2) that the contract was void because it involved substantial business in Alabama when PSI had failed to qualify to do business in Alabama; (3) that the district court erred by charging the jury to disregard activities undertaken by PSI in connection with its solicitation of the contract; and (4) that the district court erred by admitting prejudicial hearsay.

**A. Whether the contract was made in Alabama and thus void.**

Shook and Fletcher's first contention is that PSI should not have been allowed to recover on its action for breach of contract because the contract was made in Alabama at a time when PSI had failed to qualify to do business in the state. PSI claims that the district court correctly submitted the issue regarding where the contract was formed to the jury; the jury found that the contract was not made in Alabama. That finding is supported by the evidence; therefore, the district court's ruling that the contract was not void is correct.

■ Section 10–2A–247(a), Code of Alabama (1975) provides:

All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement....

Section 40–14–4, Code of Alabama (1975) provides a similar penalty for foreign, non-qualifying corporations:

All contracts made in this state by any foreign corporation which has not first complied with the provisions of sections 40–14–1 through 40–14–3 [payment of qualification fees for incorporation] shall, at the option of the other party to the contract, be wholly void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of such contract....

These statutes support Shook and Fletcher's contention that contracts entered into in Alabama by corporations not qualified to do business in the state are void. But, was the contract between Shook and Fletcher and PSI made in Alabama? The jury found that it was not. We hold that the evidence was sufficient to support the jury's verdict.

PSI delivered its bid for the Miller project to Shook and Fletcher's office in Birmingham, Alabama, sometime before December 21, 1982. Shook and Fletcher gave PSI a verbal commitment on the project at the meeting held in Alabama on February 14, 1983. Shook and Fletcher contends that if a contract was not formed at that meeting, one was definitely formed when it sent "three written confirmations or acceptances" of PSI's bid from its offices in Birmingham.

Shook and Fletcher's "written confirmations" were, however, in reality, purchase orders. The final purchase order of May 13, 1983, did not reflect the bid proposal previously submitted by PSI. PSI contends that the purchase order constituted a counter-offer to PSI's previous bid proposal and that it accepted Shook and Fletcher's counter-offer (which it received at its offices in Hurricane Mills, Tennessee) by shipping goods.

To support its position, PSI correctly argues that under Alabama law, an acceptance is required to be identical in all material respects to the offer; otherwise, no meeting of the minds and no agreement exists. *Ex Parte Wright*, 443 So.2d 40 (Ala.1983) (citing *Smith v. Chickamauga Cedar Company*, 263 Ala. 245, 82 So.2d 200 (Ala.1955)).

The evidence in this case would support a finding that the contract between PSI and Shook and Fletcher was formed in Alabama; however, the evidence also supports the jury's finding—that the contract was made in Tennessee. Therefore, we hold that the district court did not err in refusing to rule that the contract was made in Alabama.

B. Whether the contract was void because PSI performed substantial business in Alabama without qualifying to do business in the state.

Shook and Fletcher also contends that the district court erred by failing to rule that the contract between PSI and Shook and Fletcher was void because PSI's actions in fulfilling the contract constituted their doing substantial business in Alabama. To support its contention, Shook and Fletcher relies in part on section 232 of the Alabama Constitution which provides that:

No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein and without filing with the Secretary of State a certified copy of its articles of incorporation or association....

■ Again, Shook and Fletcher is correct in its contention that under Alabama law, contracts made by foreign corporations outside Alabama involving substantial business within Alabama are void, when such corporations have failed to qualify to do business in Alabama. *See Calvert Iron Works, Inc. v. Algernon Blair, Inc.*, 284 Ala. 655, 227 So.2d 424 (1969). But, as in the previous discussion, the more pertinent question is whether PSI was, indeed, "doing substantial business" in Alabama. The jury found that PSI was not, and the district court refused to upset the jury's verdict. We hold that the evidence was sufficient to support the jury's verdict and that the district court did not err in failing to rule that PSI's activities constituted doing substantial business in Alabama.

Although PSI made numerous trips to Alabama to secure the bid on the Miller project and to help Shook and Fletcher employees install PSI's allegedly defective panels, PSI never manifested such a presence in Alabama such that it can be said that PSI was doing "substantial business" in the state.

The outcome might have been different had PSI located an insulation panel production facility in Graysville, Alabama, as it had discussed previously. But PSI fabricated all of its insulation panels for the Miller project at its facilities in Hurricane Mills, Tennessee. Moreover, PSI ran all of its tests on the panels, performed nearly all of its engineering duties, and made all of its technical drawings in Tennessee. These facts distinguish the instant case from *Sanjay, Inc. v. Duncan Construction Company, Inc.*, 445 So.2d 876 (Ala.1983), a case upon which Shook and Fletcher places a great deal of reliance.

*Sanjay* involved a contract for the performance of construction activities. The subcontractor, Sanjay, was to furnish work, labor, and materials for the construction of a motel in Sheffield, Alabama. The contract was to be wholly performed within the state of Alabama. Sanjay filed a mechanic's lien against the contractor, Duncan Construction Company. The Alabama Supreme Court precluded Sanjay from recovering because Sanjay had failed to qualify to do business in Alabama and was performing substantial business in the state pursuant to its contract with Duncan. The Alabama Supreme Court stated:

This case involves a contract for the performing of construction activities, the building of a motel in Alabama. There is a difference between 'contracts requiring only the furnishing of materials, and *contracts requiring the seller to perform construction activities.*' [Citation omitted.] From the contract signed by the parties, along with the affidavits, it is obvious that more was involved in this contract than the mere 'sale and delivery

of materials' into Alabama. (Citing *Kentucky Galv. Co., Inc. v. Continental Gas Co., Inc.*, 335 So.2d [649] at 651 (Ala.1976)).

*Sanjay,* 445 So.2d at 880–81 (emphasis in original).

In this case, PSI's primary duty under its contract with Shook and Fletcher was to sell and deliver materials into Alabama. Most of PSI's travels into the state of Alabama involved negotiations and trouble-shooting as opposed to performing contractual services.

With this conclusion, we also hold that the district court did not err in charging the jury to disregard activities undertaken by PSI in connection with its contract solicitations.

C. Whether the district court committed reversible error by admitting hearsay evidence.

Shook and Fletcher contends that the district court committed reversible error by allowing PSI to elicit prejudicial hearsay evidence from Wayne Killion, president and chief executive officer of Shook and Fletcher. Killion testified, over Shook and Fletcher's objections, that an APCO employee told him not to let Dick Madigan of Shook and Fletcher back on the Miller job site. This testimony was offered to prove PSI's proposition that APCO was upset with Madigan (rather than PSI's performance) and that Madigan caused the relationship between Shook and Fletcher and APCO to deteriorate.

■ The district court should not have admitted the statement; however, we hold that the error was harmless. Killion's statement was not prejudicial to Shook and Fletcher because testimony regarding the causes of the deteriorating relationship between APCO and Shook and Fletcher had already been elicited from Killion and others. In fact, just before Killion submitted his hearsay testimony, he testified, without objection, that he did not think Madigan caused the trouble between APCO and Shook and Fletcher.

■ Finally, Shook and Fletcher contends that the district court committed reversible error by allowing Charles Phy, a PSI employee, to testify that Charles Wesson of APCO asked him, "If I knew anyone that could put the panels up right." The testimony was prejudicial, in Shook and Fletcher's view, because it again gave the impression that APCO was dissatisfied with Shook and Fletcher's performance. The district court allowed the testimony as a present sense impression exception to the hearsay rule. We agree with Shook and Fletcher that the district court erred in so ruling; however, we hold that the error was harmless. Fed.R.Civ.P. 61.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court entering judgment on the verdicts in PSI's favor and against Shook and Fletcher. We also affirm the district court's order denying Shook and Fletcher's motion for judgment notwithstanding the verdict or for a new trial.

AFFIRMED.