The plaintiff appeals from a summary judgment in favor of defendants Checkers Drive In Restaurants of North America, Inc., and Maidee G. Youngblood (hereinafter together referred to as "Checkers"). The only issue raised on appeal is whether the plaintiff, Stewart Machine and Engineering Company, Inc. (hereinafter "Stewart"), a foreign corporation, can bring suit and recover damages for an alleged breach of contract when, as a foreign corporation, it had failed to qualify to do business in Alabama. The trial court held that because Stewart was an unqualified foreign corporation, it could not use the courts of Alabama to recover damages. We agree.
Stewart is a Mississippi corporation with its principal place of business in Picayune, Mississippi. It is engaged in the business of constructing prefabricated buildings and/or parts of buildings to be transported to designated locations throughout the United States and assembled according to prescribed specifications.
Checkers is a Nevada corporation qualified to do business in Alabama. It is a franchisor engaged in the business of operating and licensing third parties to utilize a fast-food restaurant system of operation under the trademark and tradename of "Checkers."
In Mississippi, on February 3, 1988, after months of negotiation, Checkers and Stewart entered into a "Building Purchase Agreement," whereby Stewart was to manufacture the parts to construct two buildings pursuant to plans and specifications provided by Checkers. The agreement also required Stewart to deliver and construct a building at a designated site in Tuscaloosa, Alabama, and another building at a site in Birmingham, Alabama. The entire contract price reflected in the agreement is $95,261 for the two buildings.
After the buildings were completed, an inspection of the Birmingham site led to a dispute between the parties. The dispute *Page 1074 
involved Checkers's refusal to pay the balance of the contract price. Stewart sought a declaration of a materialman's lien from the judge of probate of Jefferson County against Checkers for $18,783.71.[1]
Stewart later sued Checkers to enforce the lien, as well as to recover damages for the alleged breach of contract by Checkers. In response, Checkers moved to dismiss, claiming that Stewart was a foreign corporation not qualified to do business in Alabama. The trial court ordered that the motion to dismiss be heard as a motion for summary judgment. Both parties then filed the appropriate affidavits with the trial court. On October 31, 1989, the trial court entered a summary judgment in favor of Checkers, citing Sanwa Business Credit Corp. v. G.B.(Boots) Smith Corp., 548 So.2d 1336 (Ala. 1989), as authority. Stewart appeals.
Stewart concedes that it was not qualified to do business in Alabama either at the time the contract was made or at the time performance of the contract was completed. However, Stewart claims it is immune from the effect of Alabama's "door closing" statutes because, it says, it was engaging only in interstate commerce and was therefore protected by the commerce clause in the United States Constitution.
First, we note the standard of review in summary judgment cases. For a summary judgment to be proper, there must be no genuine issue as to any material fact and the moving party must be entitled to a summary judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Sanjay, Inc. v. Duncan Construction Co.,445 So.2d 876 (Ala. 1983).
Second, because Stewart concedes that it was not qualified to do business in Alabama at the time the contract was entered into or at the time of performance, a discussion of Alabama's "door closing" statutes is not necessary. Ala. Code 1975, § 10-2A-247(a); Art. XII, § 232, of the Alabama Constitution; and Ala. Code 1975, § 40-14-4, all bar foreign corporations not qualified to do business in Alabama from enforcing their contracts in the courts of this state. See Sanwa BusinessCredit Corp., supra; Green Tree Acceptance, Inc. v. Blalock,525 So.2d 1366 (Ala. 1988); Wallace Construction Co. v.Industrial Boiler Co., 470 So.2d 1151 (Ala. 1985); and SanjayInc., supra. However, businesses engaged in interstate commerce are protected by the commerce clause in theUnited States Constitution, U.S. Const., Art. 1, § 8, cl. 3, and are therefore immune from the effects of the "door closing" statutes. Wallace Construction Co., supra, and Johnson v. MPLLeasing Corp., 441 So.2d 904 (Ala. 1983). Additionally, we note a second exception for foreign corporations whose activities in Alabama are merely incidental to a transaction of interstate business. Wallace Construction Co., supra, and Johnson, supra.
Therefore, the focus of this case is on whether Stewart was engaged in interstate or in intrastate commerce; this issue is ultimately decided on a case-by-case basis. Green TreeAcceptance, Inc., supra, and Wallace Construction Co., supra.
However, this Court has in the past held that "[a] construction contract supplying both material and labor is an example of the type of contract that is considered intrastate." Green TreeAcceptance, Inc., 525 So.2d at 1371, citing Sanjay, Inc.,445 So.2d at 879. This point was reiterated by this Court in SanwaBusiness Credit Corp., 548 So.2d at 1341:
 "We think clearly that the combination of labor and construction in a service contract, involving a nonqualified foreign corporation, unequivocally places that contract within the purview of § 10-2A-247(a), . . . requiring qualification."
See, also, Green Tree Acceptance, Inc., supra, and cases cited therein.
However, not every contract that provides for labor is automatically deemed to involve intrastate commerce. InWallace Construction Co., we held that in a contract for the sale of a complex boiler system that required the seller to supply labor for assembly, installation, adjustment, and *Page 1075 
activation of the boiler, as well as personnel training, these activities were both "necessary and incidental to the interstate sale of the boiler itself"; thus, the contract was held not to involve intrastate activity. 470 So.2d at 1155. Nonetheless, Wallace Construction Co. is distinguishable from the case at bar. Wallace Construction Co. involved a complex system with some 300 to 400 separate parts that required approximately 300 days to assemble. Not only did the installation of the boiler require highly skilled laborers with expertise in boiler machinery, but personnel training was necessary to begin operation of the boiler. Because of the complexity involved with such a highly technical piece of machinery, supplying labor was a reasonable and appropriate incident of the sale.
In the instant case, the labor required was 1) to hire Birmingham Steel Erectors to remove the prefabricated building parts from the delivery trucks; 2) to position the building on the prepared site,[2] using a hydraulic jacking system; 3) to bolt and weld the building into place; 4) to attach all electrical wiring and test the drainage and ventilation; 5) to reattach the air-conditioning units to the building and test the system; and 6) to attach the porte-cochere, serving wings, and mounting angles to the building. The entire process required approximately four or five days of construction work. According to the contract, the "set-up charges" were made in a completely separate billing process from the manufacturing and delivery charges.
After careful review of the type of labor involved in the contract, as well as the demands of the contract itself, we are convinced that the contract between Stewart and Checkers involved more than the mere sale and delivery of materials. The construction and labor required to complete performance of the contract was substantial enough that it was not merely incidental to the sale of the structure. Although much of the construction work could be accomplished only at the site, the work was of a very general nature that could have been handled by almost any competent contractor and did not require the special expertise of Stewart. It is this element that distinguishes the Stewart-Checkers contract from the contract in Wallace Construction Co., supra.
Although we are mindful of the harshness of the rule, we conclude, based on the foregoing, that Stewart, as a nonqualified foreign corporation, should not be allowed to proceed in the Alabama court system to recover under any theory sounding in contract. Section 10-2A-247(a) has full application to the facts in this case.
Therefore, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.
[1] It is not clear from the record whether Stewart obtained the lien.
[2] The site preparation was performed by an unrelated third party, O'Sullivan Construction Company.