Trade Winds Environmental Restoration, Inc. ("TradeWinds"), brought this action against Brown Brothers Construction, L.L.C. ("BBC"), Shoalwater Condominium Association, Inc. ("Shoalwater"), and Windward Pointe Condominium Association, Inc. ("Windward"), in connection with structural-drying work performed by TradeWinds at the Shoalwater condominiums and the Windward Pointe condominiums following Hurricane Ivan. BBC, Shoalwater, and Windward moved the Baldwin Circuit Court for a summary judgment, asserting that TradeWinds' *Page 877 
claims were barred by § 10-2B-15.02, Ala. Code 1975 (Alabama's "door-closing" statute), because Trade Winds is a foreign corporation that had not qualified to do business in this State. The trial court entered a summary judgment in favor of BBC, Shoalwater, and Windward. TradeWinds appeals, arguing that § 10-2B-15.02, Ala. Code 1975, does not preclude TradeWinds from bringing its claims and that, if Alabama's door-closing statute applies, BBC, Shoalwater, and Windward are equitably estopped from asserting the statute as a defense because the parties received benefits under a contract for which they did not pay. We affirm.
 Facts and Procedural History
TradeWinds is a New York-based company that performs post-disaster response, environmental remediation, and restoration services. Following the landfall of Hurricane Ivan in September 2004, BBC, an Alabama-based general contractor, entered into a contract with TradeWinds under which TradeWinds would perform structural-drying services and restoration at a number of condominiums along the Gulf Coast, including Shoalwater condominiums and Windward Pointe condominiums ("the contract"). TradeWinds asserts that it completed the work contemplated by the contract but that BBC refused to pay TradeWinds the amount TradeWinds says is due under the contract. Trade-Winds recorded verified statements of lien in the office of the judge of probate of Baldwin County against the Windward and Shoalwater properties, seeking $210,024.75 and $188,814.25, respectively, for money owed under the contract. TradeWinds also filed this action in the Baldwin Circuit Court alleging a breach-of-contract claim against BBC, asserting unjust-enrichment claims against Shoalwater and Windward, and seeking to foreclose on its liens on the Shoalwater and Windward properties.
BBC, Shoalwater, and Windward moved the trial court for a summary judgment, asserting that TradeWinds' claims were barred by § 10-2B-15.02, Ala. Code 1975, [1] because TradeWinds is a foreign corporation that had not qualified to do business in Alabama. TradeWinds argued that the contract involved interstate commerce and, therefore, that the contract is protected from § 10-2B-15.02 by the Commerce Clause of the Constitution of the United States, U.S. Const., Art. 1, § 8, cl. 3. The trial court agreed with BBC, Shoalwater, and Windward that it was undisputed that TradeWinds had failed to obtain a certificate of authority from the secretary of state in order to transact business in Alabama and that BBC, Shoalwater, and Windward were entitled to a judgment as a matter of law. It then entered a summary judgment in favor of BBC, Shoalwater, and Windward. TradeWinds moved the trial court to alter, amend, or vacate its judgment, but the trial court denied that motion. TradeWinds appeals.
 Issues
TradeWinds presents two issues for appeal. First, TradeWinds argues that the trial court erred when it entered a summary judgment in favor of BBC, Shoalwater, and Windward on the basis of the *Page 878 
door-closing statute, because, TradeWinds argues, the contract involved interstate commerce and therefore the door-closing statute is not applicable. Second, Trade-Winds asserts that, even if the door-closing statute does apply, equitable estoppel bars its application because BBC, Shoalwater, and Windward received benefits under the contract for which they did not pay.
 Analysis
A. Standard of Review
"On appeal, this Court reviews a summary judgment de novo."DiBiasi v. Joe Wheeler Elec. Membership Corp.,988 So.2d 454, 459 (Ala. 2008) (citing Ex parte Essary,992 So.2d 5, 8 (Ala. 2007)). "` "Our review [of a summary judgment] is subject to the caveat that we must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant."'" Ex parte CSXTransp., Inc., 938 So.2d 959, 962 (Ala. 2006) (quotingPayton v. Monsanto Co., 801 So.2d 829, 833 (Ala. 2001), quoting in turn Ex parte Alfa Mut. Gen. Ins. Co.,742 So.2d 182, 184 (Ala. 1999)); Hanners v. Balfour Guthrie,Inc., 564 So.2d 412, 413 (Ala. 1990). "The facts in this case are undisputed; therefore, we will review the trial court's application of the law to those facts to determine whether the plaintiffs were entitled to a judgment as a matter of law." Carpenter v. Davis, 688 So.2d 256, 258 (Ala. 1997). "The trial court's ruling on a question of law carries no presumption of correctness, and this Court reviews de novo the trial court's conclusion as to the appropriate legal standard to be applied." McCutchen Co. v. Media Gen.,Inc., 988 So.2d 998, 1001 (Ala. 2008).
B. TradeWinds' Door-Closing Argument
The trial court entered a summary judgment in favor of BBC, Shoalwater, and Windward because it found, as a matter of law, that TradeWinds' action is "barred by the [door-closing] statute, in that[] [TradeWinds] was required to obtain a Certificate of Authority from the secretary of State to transact business in Alabama and failed to do so." (Trial court's summary-judgment order.)
To determine whether the trial court properly entered a summary judgment in favor of BBC, Shoalwater, and Windward on the basis that TradeWinds' claims are barred, we must address § 10-2B-15.02, Ala. Code 1975, Alabama's door-closing statute. Section 10-2B-15.02(a) provides:
 "(a) A foreign corporation transacting business in this state without a certificate of authority or without complying with Chapter 14A of Title 40 may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity."
"This section of the Code is part of a statutory scheme that requires foreign corporations to receive a certificate of authority to do business in this State before transacting business here." Green Tree Acceptance, Inc. v.Blalock, 525 So.2d 1366, 1370 (Ala. 1988). "Failure to secure such a certificate means that the foreign corporation cannot enforce a contract entered into in this State."525 So.2d at 1370. "A foreign corporation that has not been authorized to do business in Alabama is not barred from enforcing its contracts in the courts of this state, however, `unless *Page 879 
the business conducted here by [the] nonqualified corporation[] is considered "intrastate" in nature.'"Building Maintenance Pers., Inc. v. InternationalShipbuilding, Inc., 621 So.2d 1303, 1304 (Ala. 1993) (quoting Wise v. Grumman Credit Corp., 603 So.2d 952,953 (Ala. 1992)). This is because "businesses engaged in interstate commerce are protected by the commerce clause in the United States Constitution, U.S. Const., Art. 1, § 8, cl. 3, and are therefore immune from the effects of the `door closing' statutes." Stewart Mach. Eng'g Co. v.Checkers Drive In Rests. of N. America, Inc.,575 So.2d 1072, 1074 (Ala. 1991). Because TradeWinds concedes that it was not qualified to do business in Alabama at the time the contract was entered into, or, for that matter, at the time of performance under the contract, "the focus of this case is on whether [TradeWinds] was engaged in interstate or intrastate commerce; this issue is ultimately decided on a case-by-case basis." Stewart Mach. Eng'g, 575 So.2d at 1074. "[I]n determining whether a corporation is doing business in Alabama within the meaning of § [10-2B-15.02], courts are flexible and decide each case on its own facts." Green TreeAcceptance, 525 So.2d at 1370.
In Eli Lilly Co. v. Sav-On-Drugs, Inc.,366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), the Supreme Court of the United States addressed when a state may require a foreign corporation to obtain a certificate of authority to do business in the state. The Supreme Court stated:
 "Lilly is free to send salesmen into New Jersey to promote this interstate trade without interference from regulations imposed by the State. On the other hand, it is equally well settled that if Lilly is engaged in intrastate as well as interstate aspects of the New Jersey drug business, the State can require it to get a certificate of authority to do business. In such a situation, Lilly could not escape state regulation merely because it is also engaged in interstate commerce. We must then look to the record to determine whether Lilly is engaged in intrastate commerce in New Jersey."
366 U.S. at 279, 81 S.Ct. 1316 (footnote omitted). Alabama caselaw also holds that § 10-2B-15.02, Ala. Code 1975, is applicable to those entities that engage in intrastate business and fail to register. See Brown v. Pool Depot, Inc.,853 So.2d 181, 185 (Ala. 2002) ("`It has been held that a foreign corporation doing business in this state without qualifying cannot use our courts to enforce its contracts.Continental Telephone Corp. v. Weaver, 410 F.2d 1196
(5th Cir. 1969). Alabama Const. art. XII, § 232, and §§ 10-2A-247 and 40-14-4, Code 1975 [now codified as 10-2B-15.02, Ala. Code 1975] prohibit a nonqualified foreign corporation from enforcing a contract made in Alabama if it is doing business in Alabama.'" (quoting Competitive Edge, Inc. v. Tony MooreBuick-GMC, Inc., 490 So.2d 1242, 1244-45
(Ala.Civ.App. 1986))). Thus, whether § 10-2B-15.02 applies to a contract involving a foreign corporation turns on whether the foreign corporation, whether or not engaged in interstate commerce, is engaged in intrastate business.
BBC, Shoalwater, and Windward argued to the trial court that the contract is ultimately a construction contract and that it thus necessarily implicates intrastate business. "One area of business is quite clearly defined as intrastate, rather than interstate, activity. This Court has previously held that `labor is not an article of commerce, nor is the agreement to supply it, nor the execution of the agreement, an act of commerce.'" Green Tree Acceptance, 525 So.2d at 1370
(quoting Computaflor Co. v. N.L. Blaum Constr. Co.,289 Ala. 65, 68, 265 So.2d 850, 852 (1972)). Thus, "[a] construction contract *Page 880 
supplying both material and labor is an example of the type of contract that is considered intrastate." Green TreeAcceptance, 525 So.2d at 1371. BBC, Shoal-water, and Windward point to Trade-Winds' complaint as evidence that the contract in this case is, in fact, a construction contract. In its complaint, Trade-Winds alleges that "[BBC] entered into an agreement with [TradeWinds] retaining the services of [TradeWinds] to provide structural drying services" and that "[BBC] retained the services of [Trade-Winds] to provide services, labor and materials including structural drying" at both Shoalwater condominiums and Windward Pointe condominiums.
TradeWinds argues, however, that this Court has specifically rejected a per se rule that a contract in which a foreign corporation supplies labor and materials necessarily involves intrastate business. TradeWinds' brief at 29 (quotingStewart Mack. Eng'g, 575 So.2d at 1074 ("[N]ot every contract that provides for labor is automatically deemed to involve intrastate commerce.")). TradeWinds contends that "where a transaction calls on an out-of-state company to perform unique or specialized labor, as opposed to general construction, that labor is `necessary and incidental' to the interstate business . . . and the [contract] is protected by the commerce clause." TradeWinds cites Wallace ConstructionCo. v. Industrial Boiler Co., 470 So.2d 1151 (Ala. 1985), in which "Wallace was the successful bidder for a contract with the University of Montevallo for, among other things, the installation of a heating system at the school." WallaceConstruction, 470 So.2d 1151. Industrial Boiler, a subcontractor, "agreed to manufacture and install [a] boiler system," id.; however, Wallace refused to pay under the agreement and asserted § 10-2A-247 (now § 10-2B-15.02) as a defense. This Court determined that the contract involved interstate commerce because "the combined local activities of Industrial Boiler in Alabama concerning the assembly and installation of the boiler did not constitute intrastate business, but were necessary and incidental to the interstate sale of the boiler itself." WallaceConstruction, 470 So.2d at 1155.
As TradeWinds alleges in its complaint, it provided "services, labor and materials including structural drying." Although it may be true that TradeWinds "[brought] its drying equipment from out-of-state for use at [Shoalwater condominiums and Windward Pointe condominiums]," it does not allege that its labor, materials, and service were incident to an interstate sale. Therefore, Wallace Construction is inapposite.
TradeWinds also relies on Shook Fletcher InsulationCo. v. Panel Systems, Inc., 784 F.2d 1566 (11th Cir. 1986). TradeWinds argues that in Shook Fletcher the United States Court of Appeals for the Eleventh Circuit "affirmed the lower court's decision that a subcontractor was not doing `substantial business' in Alabama simply because it sent its employees into the state pursuant to the contract." However, Shook Fletcher also involved labor and materials incident to an interstate sale. See Shook Fletcher, 784 F.2d at 1570 ("PSI fabricated all of its insulation panels for the Miller project at its facilities in Hurricane Mills, Tennessee. . . . In this case, PSI's primary duty under its contract with Shook and Fletcher was to sell and deliver materials into Alabama. Most of PSI's travels into the state of Alabama involved negotiations and troubleshooting as opposed to performing contractual services."). Therefore, likeWallace Construction, Shook Fletcher is distinguishable and therefore inapposite.
TradeWinds further relies on Kentucky Galvanizing Co. v.Continental Casualty Co., 335 So.2d 649 (Ala. 1976). However, *Page 881 Kentucky Galvanizing Co., too, involved a foreign corporation that manufactured and delivered goods incident to an interstate contract for the sale of goods. The Court there noted
 "that Galvanizing has never manufactured, fabricated or installed any materials in the State of Alabama. What it has sold to buyers in Alabama it has delivered to the assigned job sites. Other than delivery, Galvanizing does nothing in Alabama except what is incident to soliciting and taking orders for shipment of goods in interstate commerce and delivery of these goods."
335 So.2d at 651. In fact, Kentucky Galvanizing Co.
recognized that this Court "has distinguished between contracts requiring only the furnishing of materials, and contracts requiring the seller to perform construction activities. When the transaction requires only sale and delivery of the materials, we have held it to be within the scope of interstate commerce. . . ." 335 So.2d at 651. Therefore, KentuckyGalvanizing Co. does not support TradeWinds contention that services, labor, and materials, which TradeWinds provided under the contract, were incident to an interstate sale.
In this case, TradeWinds and BBC "entered into an agreement . . . retaining the services of [TradeWinds] to provide structural drying services" and "provid[ing] services, labor, and materials, including structural drying" at Shoalwater condominiums and Windward Pointe condominiums, two locations in Alabama. It appears that the contract does, in fact, involve "both material and labor [and] is an example of the type of contract that is considered intrastate." Green TreeAcceptance, 525 So.2d at 1371. Thus, we conclude that TradeWinds has not demonstrated that the contract was not intrastate in nature. Therefore, § 10-2B-15.02, Ala. Code 1975, bars TradeWinds' breach-of-contract action, and the trial court properly entered a summary judgment in favor of BBC on the basis that BBC was entitled to a judgment as a matter of law.
C. TradeWinds' Equitable Claims and Arguments
TradeWinds argues that, even if this Court holds that the contract is intrastate in nature and thus that the door-closing statute applies, "equity bars the defendants from asserting the door-closing statute in this case." More specifically, TradeWinds asserts that
 "the evidence shows that TradeWinds rushed into Alabama after Hurricane Ivan based on the request of BBC . . . that it came on an emergency, expedited basis [to] perform time-sensitive disaster response services. . . . Having solicited TradeWinds to respond on an emergency basis, it is plainly inequitable for the defendants to now use TradeWinds' decision to comply with their request as a reason to withhold payment for the services TradeWinds performed."
TradeWinds' brief at 42. Although the result may be harsh, we hold in this case, as we have in others, that TradeWinds "as a nonqualified foreign corporation[] should not be allowed to proceed in the Alabama court system to recover underany theory sounding in contract." Sanwa Bus.Credit Corp. v. G.B. "Boots" Smith Corp., 548 So.2d 1336,1341 (Ala. 1989). See also Stewart Mach. Eng'g, 575 So.2d at 1075("Although we are mindful of the harshness of the rule, we conclude, based on the foregoing, that Stewart, as a nonqualified foreign corporation, should not be allowed to proceed in the Alabama court system to recover under any theory sounding in contract."); Sanjay, Inc. v. Duncan Constr.Co., 445 So.2d 876, 879 (Ala. 1983) ("[The equity] provision in the statute does not alter the law that an unqualified foreign *Page 882 
corporation cannot recover on contract. As was said of the action in C.C. Products, Inc. v. PremierIndustrial Corp., 290 Ala. 179, 275 So.2d 124 (1972), any way you slice it, the action in this suit was excontractu"). Therefore, Trade-Winds is barred from bringing its breach-of-contract claim against BBC either at law or in equity.[2]
TradeWinds, however, also asserted a claim of "unjust enrichment" against both Shoalwater and Windward and sought to foreclose its lien against both properties. In support of these claims, TradeWinds relies on First Bank of Russell Countyv. Wells, 358 So.2d 435 (Ala. 1978).[3] In FirstBank of Russell County, this Court stated:
 "Statutes such as ours which declare void, at the action of a nonqualified foreign corporation (or any person claiming under such corporation), all contracts or agreements entered into in this state are not only penal, but are, as well, in derogation of the common law. They, therefore, should be strictly construed. Sayers Muir Service Station v. Indian Refining Co., 266 Ky. 779, 100 S.W.2d 687 (1936), cited with approval in Jones v. Americar, Inc., [283 Ala. 638, 219 So.2d 893 (1969)]. They should not be read so as to deny to litigants equitable rights long recognized by our jurisprudence. To deny to the Builder in the instant case the relief it seeks because of § 10-2-254, 1975 Code [now § 10-2B-15.02], would not only result in a decision which would unjustly enrich the Wells[es] but would also read into the statute a prohibition which is not there."
358 So.2d at 437. Our later decisions, though, have not followed this holding. See Burnett v. National StonehengeCorp., 694 So.2d 1276, 1279 (Ala. 1997) ("To allow Stonehenge to recover under the theory that equity requires the Insurance Department to pay Stonehenge for its services, even though Stonehenge never qualified to do business in Alabama, would circumvent § 10-2A-247 [now § 10-2B-15.02]. This Court's prior decisions on this matter have made it clear that foreign corporations cannot circumvent the penal effect of the statute by labeling their claim as something other than [a] contract claim." (citing Green Tree Acceptance,525 So.2d at 1372)). TradeWinds argues that § 10-2B-15.02, Ala. Code 1975, should be narrowly construed because it is penal in nature. TradeWinds' reply brief at 17. This" issue was squarely addressed in Freeman Webb Investments, Inc. v.Hale, 536 So.2d 30, 31 (Ala. 1988), in which this Court noted that "due to the penal nature of this statute . . . *Page 883 
its application has been limited to those cases in which the action is ex contractu as opposed to ex delicto."536 So.2d at 31. The Freeman Webb decision then went on to address Freeman Webb's remaining equitable claims, one of which was unjust enrichment, and held that, "[w]ith regard to the claims of conversion and unjust enrichment, it is clear that these claims merely seek to enforce those rights derived directly from the contract, and are, therefore, prohibited."Id. As in Freeman Webb, TradeWinds' unjust-enrichment and lien claims seek to enforce those rights derived directly from the contract, that is, TradeWinds seeks to recover from Shoal-water and Windward payment for services performed by TradeWinds pursuant to the contract. Therefore, these claims are also prohibited under § 10-2B-15.02, Ala. Code 1975.
 Conclusion
Section 10-2B-15.02, Ala. Code 1975, prohibits all TradeWinds' claims; therefore, BBC, Shoalwater, and Windward were entitled to a summary judgment on its claims against them, and we affirm the summary judgment.
AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and MURDOCK, JJ., concur.
PARKER, J., dissents.
[1] Section 10-2B-15.02(a), Ala. Code 1975, provides:
 "(a) A foreign corporation transacting business in this state without a certificate of authority or without complying with Chapter 14A of Title 40 may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity."
[2] TradeWinds' complaint does not appear to assert any equitable claims against BBC, with whom it contracted; however, TradeWinds' principal brief suggests that equitable considerations apply to its claims against BBC, Shoalwater, and Windward.
[3] TradeWinds also relies on Pool Depot,853 So.2d at 187, in which this Court held that "Brown's [the Alabama resident's] suing Pool Depot for fraud and tortious attempt to collect a debt and opposing arbitration of these claims is not an unlawful attempt to `accept the benefits and avoid the burdens or limitations of a contract. Brown does not seek any benefit whatsoever under the contract,' which Brown contends is void." (Citations omitted.) It appears, however, that PoolDepot was applying the final portion of § 10-2B-15.02
(a), which provides that "nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity"; this Court was noting that Brown's claims were proper because Brown sought recovery on a claim wholly unrelated to the contract and, thus, it was not inequitable for Brown to recover under those claims after he used § 10-2B-15.02, Ala. Code 1975, to void his contract with a foreign corporation.Pool Depot does not further TradeWinds' argument that it is entitled to recover under principles of equity from any of BBC, Shoalwater, or Windward.