BRYAN, Judge.
 

 R. Scott Ricks, the defendant below, appeals from a judgment entered on a jury verdict in favor of the plaintiff, Riddle Equipment, Inc. (“Riddle Equipment”). Ricks contends that the trial court erred in denying him a judgment as a matter of law (“JML”). We reverse and remand.
 

 “In reviewing the denial of a JML, we consider all of the relevant undisputed evidence, accept the tendencies of the disputed evidence most favorable to the non-moving party, and resolve all reasonable factual doubts in favor of the nonmoving party.”
 
 Alfa Life Ins. Corp. v. Jackson,
 
 906 So.2d 143, 146 (Ala.2005). Considered in that manner, the evidence in this case established the following material facts.
 

 In November 2003, Stan Riddle, the owner of Riddle Equipment, asked Ricks if Riddle Equipment could store two large paper-refining machines (“the refiners”) in a building (“the building”) in Hanceville that was owned by a company in which Ricks owned an interest while Riddle Equipment attempted to find a buyer for the refiners. Ricks consented to Riddle Equipment’s storing the refiners in the building. Approximately two years later, a third party stole the refiners while they were stored in the building.
 

 Regarding the November 2003 conversation in which he asked Ricks if Riddle Equipment could store the refiners in the building, Stan Riddle testified, in pertinent part:
 

 “Q. [By counsel for Riddle Equipment:] [W]hat agreement did ya’ll reach?
 

 “A. Well, Scott [Ricks] brought up in the conversation — I’m not sure exactly his words, but his comment was that he was a businessman and he wanted to know what was in it for him. And at that time I told him, I said, I’m not sure what these refiners will sell for, so I think it’s a little premature right now to talk about a given number, but there will be a commission in there for you when these are sold.
 

 
 *813
 
 [[Image here]]
 

 “Q. [By counsel for Riddle Equipment:] ... At that time did you have any discussion with Mr. Ricks about what a reasonable commission might be? Did you put a number to that?
 

 “A. No, we did not.
 

 [[Image here]]
 

 “Q. And so the understanding you had at that time was you could leave your equipment on Scott Ricks’ property for an undetermined amount of time without any agreement as to how much you were going to pay him, is that correct?
 

 “A. That’s what he and I agreed to, yes.”
 

 Stan Riddle testified that, after the refiners were stolen, he had another conversation with Ricks in December 2005. Regarding that conversation, Stan Riddle testified, in pertinent part:
 

 “Q. [By counsel for Riddle Equipment:] After the refiners were stolen ..., did you talk to Mr. Ricks ... about how much you were going to pay him had the refiners been sold?
 

 “A. Yes, we had a conversation at that point. And he mentioned that he thought it would be a good idea if we had something in writing. He and I came to an agreement that $5,000 would be a number that we would assign to that. He said it would be a good idea that we had something in writing for the FBI to have something to put in their file.”
 

 Subsequently, Riddle Equipment and Stan Riddle sued Ricks, stating claims of breach of contract, conversion, negligence, and wantonness and seeking damages for the loss of the refiners. Answering the complaint, Ricks denied that he was liable. The action then proceeded to a trial before a jury.
 

 At the close of the plaintiffs’ evidence, Ricks moved the trial court for a JML with respect to all the claims against him. The trial court denied Ricks a JML with respect to Riddle Equipment’s breach-of-contract claim but granted Ricks a JML with respect to all the other claims against him. The trial then proceeded with respect to Riddle Equipment’s breach-of-contract claim. At the close of all the evidence, Ricks moved for a JML with respect to Riddle Equipment’s breaeh-of-contract claim. Ricks asserted, among other grounds, that the parties’ agreement did not constitute an enforceable contract because, he said, its terms were too indefinite. The trial court denied Ricks a JML with respect to Riddle Equipment’s breach-of-contract claim and submitted that claim to the jury. The jury returned a verdict in favor of Riddle Equipment and awarded it $25,000 in damages.
 

 After the trial court entered a judgment on the jury verdict, Ricks timely renewed his motion for a JML. Again, Ricks asserted, among other things, that the parties’ agreement did not constitute an enforceable contract because, he said, its terms were too indefinite. The trial court denied Ricks’s renewed motion for a JML, and Ricks timely appealed to this court.
 

 “ ‘The appellate standard for reviewing a ruling on a motion for judgment as a matter of law, a “JML,” is the same as the standard for the original decision by the trial court.
 

 [[Image here]]
 

 “ ‘JML in favor of a movant who does
 
 not
 
 assert the claim or affirmative defense but who only opposes it, and who therefore does not bear the burden of proof, is appropriate in either of two alternative cases. One is that the claim or affirmative defense is invalid in legal theory. The other is that one or more contested essential elements of the claim or affirmative defense is unsupported by substantial evidence. If either alternative be true, JML is appropriate. If,
 
 *814
 
 however, the nonmovant’s claim or affirmative defense is valid in legal theory and is supported by substantial evidence on every contested element, JML is inappropriate irrespective of the presence or weight of countervailing evidence.
 

 “ ‘...
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989), explains, “substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” A trial court deciding a motion for JML and an appellate court reviewing such a ruling must accept the tendencies of the evidence most favorable to the nonmovant and must resolve all reasonable factual doubts in favor of the nonmovant.’ ”
 

 Alfa Life Ins. Corp. v. Jackson,
 
 906 So.2d at 149-50 (quoting
 
 Ex parte Helms,
 
 873 So.2d 1139, 1143-44 (Ala.2003)).
 

 Although Ricks has presented several issues for review on appeal, the dispositive issue is whether the agreement reached by the parties in November 2003 was sufficiently definite for it to constitute an enforceable contract. We conclude that it was not.
 

 “ ‘To be enforceable, the [essential] terms of a contract must be sufficiently definite and certain,
 
 Brooks v. Hackney,
 
 329 N.C. 166, 170, 404 S.E.2d 854, 857 (1991), and a contract that “ ‘leav[es] material portions open for future agreement is nugatory and void for indefiniteness’ ” .... ’
 
 Miller v. Rose,
 
 138 N.C.App. 582, 587-88, 532 S.E.2d 228, 232 (2000) (quoting
 
 MCB Ltd. v. McGowan,
 
 86 N.C.App. 607, 609, 359 S.E.2d 50, 51 (1987), quoting in turn
 
 Boyce v. McMahan,
 
 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974)). ‘A lack of definiteness in an agreement may concern the time of performance,
 
 the price to be paid,
 
 work to be done, property to be transferred, or miscellaneous stipulations in the agreement.’ 1 Richard A. Lord,
 
 Williston on Contracts
 
 § 4:21, at 644 (4th ed. 2007). ...”
 

 White Sands Group, L.L.C. v. PRS II, LLC,
 
 998 So.2d 1042, 1051 (Ala.2008) (emphasis added);
 
 see also Smith v. Chickamauga Cedar Co.,
 
 263 Ala. 245, 82 So.2d 200 (1955).
 

 Whether the terms of an agreement are sufficiently definite for it to constitute an enforceable contract is a question of law to be determined by the court.
 
 White Sands,
 
 998 So.2d at 1052-53. In the case now before us, because the November 2003 agreement between the parties neither specified the amount of the commission Ricks would be paid nor specified a method for determining that amount nor specified the length of time the refiners would be stored in the building, that agreement was too indefinite to constitute an enforceable contract.
 
 Id.
 
 Moreover, the parties’ agreement in December 2005 that the commission would have been $5,000 did not make the parties’ agreement sufficiently definite to constitute an enforceable contract on the date the refiners were stolen because the parties did not enter into their December 2005 agreement until after the refiners had already been stolen.
 

 Accordingly, the trial court erred in denying Ricks a JML with respect to Riddle Equipment’s breach-of-contract claim; therefore, we reverse the judgment of the trial court and remand the cause to the trial court for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.